| | | |
|---|---|---|
| MEGHAN SONNIER SIMMS, individually | § | |
| and GABRIELA LAVINE as Next | § | |
| Friend of Minor J.S. and on behalf of the Estate of | § | |
| JERMAINE K. SONNIER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 4:23-cv-2004 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| JERRY RIVERA, FNU SCHAD, ANTHONY | § | |
| JACKSON, GARRETT PULATIE, PERRY | § | |
| FENOGLIO, WILLIAM KEEFE, ERIC | § | |
| MALDONADO, JOSEPH BRAVO, TAYLOR | § | |
| PEACOCK, FNU GARZA, CITY OF HOUSTON, | § | |
| TEXAS, JOHN DOE POLICE OFFICER 1, | § | |
| and JOHN DOE FIRE DEPARTMENT OFFICERS | § | |
| 1-5, , | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COMES NOW, Meghan Sonnier Simms, individually as the surviving mother of Jermaine K. Sonnier ("Sonnier") deceased and Gabriela Lavine, as next friend of J.S., the minor son of Jermaine K. Sonnier and on behalf of the Estate of Jermaine K. Sonnier ("Sonnier") deceased, complaining of Defendant Officers Jerry Rivera, FNU (First Name Unknown) Schad, Anthony Jackson, Garrett Pulatie, Perry Fenoglio, William Keefe, Eric Maldonado, Joseph Bravo, Taylor Peacock, FNU Garza , and John Doe HPD Officer 1(collectively the "Defendant Officers"), in their individual capacity; the City of Houston, Texas, more particularly the Houston Police Department ("HPD"); and John Doe Fire Department Officers 1-5; and for cause of action will respectfully show unto this Honorable Court as follows:

> To establish deliberate indifference, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' "

*Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001); quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).

# I.

## NATURE OF THE ACTION

1.      This is an action brought by the Plaintiffs against the Defendant Officers for their use of excessive, deadly force and failure to render medical aid or promptly calling for emergency assistance in the face of known, serious medical emergency, resulting in the death of Jermaine Sonnier ("Sonnier") under the color of law in violation of his individual rights under the Fourth and Eighth Amendments of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983. The Plaintiffs also bring this action against the John Doe Houston Fire Department Officers for their failure to timely render medical assistance to Sonnier. Furthermore, Plaintiffs and the statutory beneficiaries, are entitled to recover damages arising from the decedent's wrongful death as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for their wrongful death cause of action.

2.      The Defendants Officers, officers with the Houston Police Department ("HPD") and the John Doe Houston Fire Department Officers, consciously disregarded the rights of Sonnier, knowing that the Policymakers would ratify and/or approve of their actions. The Defendant Officers knew Sonnier faced a substantial risk of serious medical harm but failed to timely render medical assistance. For these civil rights violations and other causes of action

discussed herein, Plaintiffs seek to hold the Defendants responsible and compensate them for their damages and the wrongful death of Sonnier.

3. On June 16, 2021, the Defendant Officers tased, repeatedly punched and used physical restraints that resulted in Jermaine Sonnier going into medical distress. Sonnier was unable to breathe due to the excessive force and physical restraint used against him. As a result of the physical restraint and tasing, Sonnier requested help, but the Defendants deliberately chose not to provide and/or summon medical care, despite the obvious need to do so, resulting in Sonnier's painful death.

4. Due to the physical force used by the Defendant Officers and their failure to assist Sonnier, despite an obvious need to do so, Sonnier became nonresponsive and subsequently died. Each of the Defendant Officers in this case had a duty to provide adequate medical care for Sonnier, while he was in their custody and care but failed to do so. Additionally, the Defendant Officers used excessive force against Sonnier that was clearly unreasonable given the circumstances of his arrest. The Defendant Officers were deliberately indifferent to Sonnier's known medical issues, both in violation of his Eight and Fourteenth Amendments rights under the United States Constitution secured pursuant to 42 U.S.C. § 1983.

5. These violations were committed because of the policies and/or customs or lack thereof of the City of Houston, Texas (the "City"). The Plaintiffs allege that Mayor Sylvester Turner, the city council and the Houston Police Department Chief Troy Finner, the City's final policymakers for the HPD (collectively referred herein as the "Policymakers"), vested with all powers of the City and with the determination of all matters of policy, vested with the authority for setting policies for city of Houston Police Officers, had a duty, but failed to implement, adequately train and enforce such policies, practices and procedures for HPD that respected

Sonnier's constitutional rights to protection and equal treatment under the law. The Policymakers failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers.

6.      Defendant City and then Chief Finney's failure to implement and provide adequate training regarding proper arrest techniques, positional asphyxia, the use of force, including the proper use of a taser, and in dealing with a suspect in serious medical distress deprived Sonnier of his rights under the Constitution and caused him unwarranted and excruciating physical pain and eventual death and caused Plaintiffs' mental anguish.   The Defendant Officers consciously disregarded the rights of Sonnier, knowing that the Policymakers would ratify and/or approve of their actions.   For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for damages.

7.      The Plaintiffs bring this action  for the wrongful death of Sonnier, and on behalf of the estate of Jermaine Sonnier for the pain and suffering Sonnier experienced prior to his death.

8.      Plaintiffs herein comply with the pleading requirements of FRCP Rule 8(a)(2) and the requirements of *Ashcroft v. Iqbal*, 556 U.S. 129 S.Ct. 1937, 1949 (2009) that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## II.

## PARTIES

9.      At all relevant times, Plaintiffs J.S., a minor, by and through his next friend, Gabriela Lavine, and Meghan Sonnier Simms were and are residents of Harris County.

10.      Meghan Sonnier Simms, the surviving mother of the Decedent, is a citizen of the United States and a resident of Houston, Texas.  Meghan Sonnier Simms is the biological mother of the Decedent.

11.      Gabriela Lavine, as Next Friend of minor J.S., is a citizen of the United States and a resident of Houston, Texas.  Gabriela Lavine is the biological mother of J.S., the surviving biological son of Decedent. Lavine brings this wrongful death action on behalf of J.S. and survival action on behalf of the Estate of Jermaine K. Sonnier, pursuant to Tex. Civ. Prac. & Rem. Code §71.021. Sonnier died without a will. No administration of the Estate of Jermaine K. Sonnier is pending, and none is necessary.  *Roundtree v. City of San Antonio, Tex.,* No. SA-18-CV-01117-JKP-ESC, 2022 WL 508343, at *5 (W.D. Tex. Feb. 17, 2022) (citing *Aguirre v. City of San Antonio,* 995 F.3d 395, 423 (5th Cir. 2021)); *Adkinson,* 2020 WL 137226, at *2.

12.      J.S., through his next friend, Gabriela Lavine, is the sole heir of Decedent's estate.  Decedent's estate had no debts at the time of his death, no real property, and no other children.  Thus, J.S., through his next friend, Gabriela Lavine—Sonnier's biological son—qualifies as an heir entitled to sue on behalf of the Estate of Jermaine Sonnier.

13.      Defendant City of Houston, Texas is a municipality existing under the laws of the State of Texas and situated mainly in Harris County.  The City, through its Mayor, Sylvester Turner, appoints the Chief of Police who must be confirmed by the City Council.  The Chief, with the approval of the Mayor, is responsible for HPD's general orders, policies, procedures,

and customs, as well as the acts and omissions challenged by this suit. HPD is also responsible for preventive, investigative, and enforcement services for all citizens of Houston. All actions that form the basis of this lawsuit were performed pursuant to general orders, policies and procedures, customs and practices of Defendant, City. The City has a responsibility and duty to promulgate, implement, train, and enforce policies and procedures related to providing medical attention for arrestees/individuals in police custody. The City may be served with citation for service of process on the City of Houston Secretary at 901 Bagby, Houston, Texas 77012.

14.     Defendant Jerry Rivera is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Rivera is being sued in his individual capacity.

15.     Defendant FNU Schad is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Schad is being sued in his individual capacity.

16.     Defendant Anthony Jackson is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Jackson is being sued in his individual capacity.

17.     Defendant Garrett Pulatie is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Pulatie is being sued in his individual capacity.

18.     Defendant Perry Fenoglio is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Fenoglio is being sued in his individual capacity.

19.     Defendant William Keefe is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Keefe is being sued in his individual capacity.

20.     Defendant Eric Maldonado is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Maldonado is being sued in his individual capacity.

21.     Defendant Joseph Bravo is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Bravo is being sued in his individual capacity.

22.     Defendant Taylor Peacock is an individual residing in Harris County, Texas and is an officer with the Houston Texas Police Department, or with the Houston Fire Department, and may be served at his or her place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he or she may be found. Defendant Peacock is being sued in his or her individual capacity.

23.     Defendant  FNU Garza[1] is an individual residing in Harris County, Texas and is or was an officer with the Houston Texas Police Department and may be served at his place of employment at the Houston Texas Police Department located at 1200 Travis Street, Houston, Texas, or wherever he may be found. Defendant Garza is being sued in his individual capacity.

24.     Defendant John Doe Police Officer 1, (hereinafter, along with the individually named officers, "Defendant Officers")is an HPD officer who was a supervisor involved in the civil rights violation of the Plaintiffs, including the death of Jermaine K. Sonnier, whose identity has not yet been determined due to the City's continuous refusal and/or failure to provide the requested information regarding the incident, pursuant to a Public Information Request and direct request to one of Houston's city attorneys.  Once he or she is disclosed and identified, he or she will be served at 1200 Travis Street, Houston, Texas or wherever he or she may be found. All Defendant Officers are being sued in their individual capacities.

25.     Defendant John Doe Firemen 1-5 are those firemen involved in the civil rights violation of the Plaintiffs, including the death of Jermaine K. Sonnier, whose identities have not yet been determined.  Once identified, they will be served at 1200 Travis Street, Houston, Texas or wherever they may be found.  The Defendant John Doe Firemen are being sued in their individual and official capacities.

### III.

### JURISDICTION AND VENUE

26.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Eighth Amendments of the United States

---

[1]   Despite efforts by attorneys for the Plaintiffs to obtain the police reports in this matter, in order to identify the officers, supervisors and firemen, the City, HPD and Texas Attorney General's Office have failed to provide this information.  FNU Garza may or may not be Andres Garza.

Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Sonnier, by constitutional and statutory provisions.

27.     This Court also has pendant jurisdiction over all other claims asserted under the laws of the State of Texas, pursuant to 28 U.S.C. §1367(a).

28.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391 because the Defendants are domiciled and/or reside in Southern District of Texas and all or a substantial part of the incidents, events and occurrences giving rise to this action accrued in the Southern District of Texas.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Sonnier's Fatal Encounter with the Defendant Officers

29.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth herein in this cause of action.

30.     On or about June 16, 2021, at approximately 1900 hours, Sonnier was with a female friend when they were harassed and followed for no reason by one of the Defendant officers who was in plain clothes and another officer who was in an unmarked black truck.  Not knowing what was going on or who they were, Sonnier decided to run to a safe location.  The unidentified individuals, now known to be the Defendant officers, pursued Sonnier on foot, for reasons unknown to Sonnier.  At all times, Sonnier was unarmed and was not threatening or trying to harm the officers or any other person. The HPD officers, without a need to do so, chased Sonnier for approximately one minute before catching up with him.

31.     The Defendant Officers, including Defendant Rivera, viciously tackled Sonnier to the ground, repeatedly punched him and placed him into a prone position, although Sonnier was

not resisting, nor had he committed a penal offense in the presence of the officers. Defendant Rivera, without attempting to de-escalate the situation, and immediately resorting to using force, tased Sonnier in the chest multiple times, which is known to be painful and not recommended, can result in death, and is prohibited. At no time did the other Defendant Officers attempt to stop Defendant Rivera. The taser used by Defendant Rivera, also known as a conducted energy device, was in direct contact with Sonnier's skin on his shirtless chest, causing excruciating pain and suffering.

32.     Defendant Rivera continued to cycle the taser even though Sonnier was outnumbered, was not resisting, and was not a danger to himself or anyone else.

33.     There were at least four officers on top of Sonnier as he lay on the ground in a prone position. It was difficult for Sonnier to put his hands behind his back or breathe because he was in a prone position and the Defendant Officers were on top of him. Any movement by Sonnier was his attempt to breathe which the officers could clearly observe.

34.     Defendant Rivera tased Sonnier without announcing that he was about to discharge his taser. At no time did Rivera say "taser, taser" and in fact, another officer was also tased because he did not hear a warning that Sonnier was about to be tased.

35.     At the point upon which Sonnier was tased by Defendant Rivera, he was not engaged in active aggression and was not actively resisting by attempting to flee. Once he was tackled to the ground, Sonnier had no opportunity to comply with the Defendant Officer's commands prior to being tased.

36.     Sonnier repeatedly stated "I didn't do nothing" but one of the Defendant Officer's responded, after Sonnier had been tased, "put your hands behind your back or I'm going to hit you."

37.     Sonnier was handcuffed, hands behind his back and was then lying on the ground, prone, on his stomach.

38.     Even though Sonnier was handcuffed and prone, a Defendant Officer stated, "you can walk or get dragged, it's your choice."

39.     Sonnier was clearly in medical distress and in need of help.  When the Defendant Officers attempted to stand Sonnier up, he immediately slumped over, his legs buckled, and he could not stand up which led to a barrage of yelling at Sonnier from the Defendant Officers.  At one point, Sonnier began to throw up and was clearly having panic attacks, further signaling he needed medical help.

40.     The Defendant Officers dragged and then carried a distressed Sonnier to the patrol car and pushed him into the back seat without checking on him.

41.     Just before being pushed into the patrol car, Sonnier, desperately begging for help, shouted out "I can't fucking breathe" to which a Defendant Officer responded, "Well get in the car." The Defendant Officers failed to summon help.

42.     The Defendant Officer who was tased went to the other side of the car and pulled Sonnier across the back seat stating to the other officers, "get him halfway in and I'll grab his arms."  As Sonnier was being pulled across the backseat, his head was banged on the floor by a Defendant officer.

43.     Once Sonnier was laying across the backseat of the patrol car, his head was hanging off the seat, making it even more obvious he was in medical distress.  The Defendant Officer who was tased stuffed his head into the car and both car doors were shut.  According to the female who was with Sonnier, he was clearly nonresponsive and in medical distress, but the

Defendant Officers failed to assist Sonnier. The Defendant Officers failed to immediately report that Sonnier had been tased.

44.     Sonnier was left inside of a closed patrol car laying across the seat.  At some point, Defendant Jackson went to the patrol car, opened the door, and just watched Sonnier as he struggled to breathe.  Defendant Jackson did not, however, offer any medical assistance or first aid to Sonnier even though he was in medical distress.

45.     Approximately ten minutes after Sonnier was put into the patrol car, a Defendant Officer radioed that they "needed extra D" and that the "suspect was complaining of chest pain and arm pain."

46.     Approximately twenty minutes after Sonnier was tackled, the Fire Department Officers arrived, and he was pulled out of the patrol car and left on the ground.

47.      Five (5) minutes later Sonnier began loudly screaming and groaning for several minutes.  Then he was carried onto a gurney.  A Defendant Officer sarcastically stated that it would be easier on your heart if you comply and stop moving even though Sonnier's movements were minimal or involuntary.

48.     Sonnier was placed into the ambulance approximately thirty (30) minutes after he was first tased by Defendant Rivera.  Even though Sonnier was clearly in medical distress, based on the information they received from the Defendant Officers, Defendant Officer Peacock and/or the Fire Department Officer Defendants chose not to transport Sonnier to the hospital with a paramedic present in the ambulance.  Defendant Taylor and/or another female Defendant from HPD or the Fire Department stated that she felt badly about that decision. At one point the Defendant Officers were laughing and making fun of Sonnier.

49.     Approximately forty-six (46) minutes after Sonnier was violently taken to the ground, tased, punch, kneed and placed in a prone position with the weight of the officers on top of him, Sonnier went into cardiac arrest.  Approximately one (1) hour and ten (10) minutes after he was violently taken to the  ground, tased, and placed in a prone position with the weight of the officers on top of him, Sonnier was pronounced dead.

50.     According to the autopsy report, the medical examiner ruled Sonnier's death a homicide.  The autopsy report also revealed Sonnier suffered multiple injuries:

**l. EVIDENCE OF DEPLOYMENT OF ELECTROMUSCULAR DISRUPTION DEVICE (EDD)**

Per law enforcement report, there was an EDD deployment; no metal barbs or other evidence of the devices are identified at autopsy. A defect, consistent with a puncture wound, is seen, which may represent an injury related to EDD deployment.

On the medial left lower chest, located 17-3/4 inches below the top of the head, 2-1 /8 inches to the left of the anterior midline, and 2-1 /4 inches inferior and 2-1/16 inches medial to the left nipple, is a   1 /8 by 1/16 inch dry, red defect, consistent with a puncture mark. The puncture mark extends shallowly into the subcutaneous soft tissue with minimal surrounding hemorrhage.

**ll. MULTIPLE BLUNT FORCE INJURIES:**

**BLUNT FORCE INJURIES OF THE HEAD:** A 1 by 5/16-inch cluster of parallel, oblique, linear, red abrasions is on the right forehead. Two, 1 /16 and 1 /4-inch oblique, linear, red abrasions are on the left forehead at the hairline. A 3/4 by 1 /4-inch cluster of parallel, oblique, linear, red abrasions is on the medial left forehead. Multiple, 1/8 to 3/4 inch linear, red-purple abrasions are on the right cheek and preauricular skin. Internally, the left frontal scalp has focal hemorrhage.

**BLUNT FORCE INJURIES OF THE TORSO:** Multiple, 1 /16-to-7/8-inch irregular to linear, purple abrasions are on the left upper chest. A 5-3/4 by I -I / 2-inch cluster of red-purple, dry, linear abrasions is on the left lower back.

**BLUNT FORCE INJURIES OF THE EXTREMITIES:**

**RIGHT UPPER EXTREMITY:** A 1-5/8 by 1/2-inch cluster of injuries, comprised of two, parallel, horizontal, linear, red-purple contused abrasions surrounded by background pink-red contusion, are on the posterior and medial right wrist. Two, 1/16- and 3/16-inch vertical, linear, red abrasions are on the posteromedial right wrist. A 3/16 by 1/8-inch cluster of confluent, linear, pink-red abrasions is on the dorsal right hand. A 1/16-inch red abrasion is on the dorsal right hand adjacent to the right second finger. A 1/16-inch red abrasion is on the dorsal right fifth finger. A 1 /16-inch red abrasion is on the palmar right hand.

Internally, the subcutaneous soft tissue of the right wrist has patchy hemorrhage.

**LEFT UPPER EXTREMITY:** A 3-3/4 by 2-1/2-inch cluster of faint pink-red, speckled to parallel, linear contused abrasions are on the left shoulder. A 1-1/8-inch linear, red abrasion is on the posteromedial left elbow. A 1-1/2 by 7/8-inch cluster of injuries, comprised of multiple, 1/16-to-3/4-inch red abrasions with variable parallel, horizontal, linear patterning, is on the anterolateral left wrist. A 1-1/2 by 1/2-inch cluster of injuries, comprised of two, parallel, horizontal, linear, pink-red contused abrasions with background pink contusion, are on the posterior and medial left wrist. Two, 1/16-inch red abrasions are on the dorsal left fourth and fifth fingers.

Internally, the subcutaneous soft tissue of the left wrist has patchy hemorrhage.

**RIGHT LOWER EXTREMITY:** Multiple, 1/8 to 1 inch irregular to linear, red abrasions are on the right knee. Two, 1-1/2 inch parallel, curvilinear, red-purple abraded contusions are on the proximal anterior right leg. An approximately 1-1/2 by 1-inch ovoid faint pink contusion is on the distal posterior right leg. A 7/8 inch red-yellow, linear abrasion is on the lateral right ankle. A 1-1 /4-inch curvilinear, red abrasion is on the posterolateral right foot.

**LEFT LOWER EXTREMITY:** Multiple, 1/8 to 1-1/8-inch angulated, red abrasions are on the left knee. Multiple, punctate to 1/2 inch variably confluent red abrasions with background pink-red contusion are on the proximal lateral left leg. An approximately 1-3/4 by 1/2 inch ill-defined, ovoid, pink contusion is on the anterior left leg.

51.     The autopsy report supports witness accounts of the force used on Sonnier. In an attempt to cover up their failures after the incident, false statements such as the following were made: "He started kicking himself out of the car." "He started fighting with us, so we dragged

him to the car." "I was about to start giving it to him." "He was playing possum." "I manhandled him down" and that's when Jerry came up and tased him. The Defendant Officers had no regard for the fact that Sonnier had been tased in the chest and then complained of chest pains. The Defendant Officers took no action to provide Sonnier with aid while waiting for medical assistance, which should have been immediate but was not. The Defendant officers were more interested in getting their story together than they were in assisting Sonnier, who was in need of medical attention.

52.    When Defendant Garza, a supervisor, or another supervisor whose identify has not been disclosed by the City and HPD, arrived on the scene he did not check on Sonnier and did not ensure that Sonnier received first aid and immediate medical attention from the Defendant Officers.

53.    As a direct and proximate result of the Defendants' conduct, the Plaintiffs have sustained substantial damages and pecuniary loss.

54.    Sonnier was nineteen (19) years old when the Defendant Officers caused his death. Sonnier was in good health, with a reasonable life expectancy of living at least 60 more years to age 79. Sonnier leaves behind his minor son and his Mother.

55.    The Plaintiffs have suffered pecuniary losses from the death of Sonnier by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. The Plaintiffs will suffer anguish, grief, and sorrow as a result of Sonnier's death and are likely to continue to suffer for a long time in the future. The closeness of Plaintiffs' relationship with Sonnier is demonstrated in many ways including the time they spent together, and the things Sonnier did for his minor son and Mother. For these losses, the Plaintiffs seek damages in a sum in excess of the minimum

jurisdictional limits of the court.

56.     Upon information and belief, HPD has failed to adequately train on its policies and procedures regarding the use of conducted energy devices (tasers) and soft weapon discharges, to aggressively curtail death and/or injuries as a result of the failure to provide proper first aid and medical care after a discharge and the danger of positional asphyxia.   Further, upon information and belief, HPD has not disciplined the officers who were involved in using excessive force against Sonnier and then ignoring his complaints of chest pains and that he could not breathe, which resulted in his death.

## V.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Against the Defendant Officers**

57.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought herein in this cause of action. Plaintiffs would show that Defendants' actions on the occasion in question were wrongful in depriving Sonnier of his constitutional rights, as alleged more fully below.

58.     The Fourteenth Amendment guarantees arrestees/detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020) (*citing Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (*citing, inter alia, Estelle v. Gamble*, 429 U.S. 97, 103 (1976))).

59.     To succeed on a deliberate-indifference claim, Plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Dyer*, 955 F.3d at 506 (*citing Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

60.     Sonnier had a constitutional right to medical care under the Fourteenth Amendment while in Defendants' custody.

61.     Refusing to treat a prisoner's complaints can give rise to Section 1983 liability. *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018); *Easter v. Powell*, 467 F.3d 459, 461–65 (5th Cir. 2006); *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 n.8. (5th Cir. 2017).

62.     An episodic-acts-or-omissions claim faults specific officials for their acts or omissions.

63.     As to the individual in an episodic-acts-or-omissions claim, the relevant question becomes "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).

64.     An official's actual knowledge of a substantial risk may only be inferred if the "substantial risk" was obvious. *Easter*, 467 F.3d at 463.

65.     Deliberate indifference is shown when a Plaintiff properly alleges that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (*quoting Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

66.     The Defendant Officers failed to follow proper medical guidelines by refusing to get the Decedent the needed immediate attention. Despite being aware that Sonnier required immediate medical attention, Defendants ignored his pleas and complaints. Defendant Officers also failed to provide first aid to Sonnier while waiting for medical personnel to arrive.

67.     Defendants' refusal to treat Sonnier and ignoring his repeated pleas and complaints were acts of subjective deliberate indifference that caused an unconstitutional delay in medical treatment which caused Sonnier's death.

**The Defendant Officers and John Doe Officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.**

68.     The Defendant Officers were aware of and ignored obvious indicia of a risk of serious harm, specifically including but not limited to, the facts that Sonnier was tased directly on his bare chest and then he complained of chest and arm pain, that his body was limp, and he could not stand or walk, that his head was slammed on the patrol car floor, and that he stated he could not breathe and he was throwing up.

69.     Thus, the Defendant Officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Dyer*, 964 F.3d at 380.

**The Defendant Officers and John Doe Officers actually drew that inference.**

70.     The Defendant Officers actually drew this inference because they acknowledged Sonnier's statements complaining of chest pains, and not being able to breathe. Furthermore, they knew he could not stand on his own and had to drag him and carry him to the patrol car.

71.     Further, the Defendant Officers' actual knowledge of the substantial risk can be inferred because it was so obvious and the need was so apparent that even laymen would recognize that care is required – as Sonnier had been tased in the chest and then complained of

chest and arm pain, stated he couldn't breathe, he could not walk to the patrol car, was throwing up and his head was banged against the floor. And when the Defendants finally pulled him out of the patrol car, he was screaming and groaning in agony. *Dyer*, 964 F.3d at 380; *Easter*, 467 F.3d at 463; *Domino*, 239 F.3d at 756; *Gobert*, 463 F.3d at 345. Thus, the Defendants actually drew the inference that a substantial risk of serious harm existed.

72.　Accordingly, the Defendant Officers were deliberately indifferent to Sonnier's health and safety because they "refused to treat him ... or [they] engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" by not providing first aide or summoning *immediate* medical care for Sonnier, rather than leaving him in a patrol car for twenty minutes and then on the wet concrete for another ten or fifteen minutes before he was placed on a gurney and then finally put in an ambulance. Instead, the Defendant Officers belittled, made fun of Sonnier, and disregarded the fact that Sonnier was in medical distress. *Domino*, 239 F.3d at 756 (*quoting Johnson*, 759 F.2d at 1238).

73.　Failing to promptly call for emergency assistance in the face of known, serious medical emergency violates the Constitution." (*Reed v. Nacogdoches County*, No. 22-40126 p. 7 (5th Cir. May 19, 2023, citing *Cope v. Cogdill*, 3 F.4th 198, 209 (5th Cir. 2021), cert. denied 597 U.S. ___ (2022)). The Defendant Officers knew Sonnier faced a substantial risk of serious medical harm and failed to take reasonable measures to abate that risk. Instead of assisting Sonnier, the Defendant Officers stood around and made jokes about Sonnier's serious medical crisis.

## Causation

74.     As a direct result of the Defendants failing to provide first aide and immediate medical care and attention to Sonnier, he suffered physical injury, pain, mental anguish, and death for which Plaintiffs sue herein.

75.     These injuries were not caused by any other means.

76.     These Defendants were at all times acting under the color of law.

77.     Further, the Defendant Officers' conduct violated a clearly established constitutional right— deliberate indifference to a detainee's serious medical needs—that was clearly established well before the Officers detained Sonnier. It was clearly established law at the time of the incident that failing to render aid or to call for emergency assistance in response to a serious threat to an inmate's life constitutes deliberate indifference.

78.     As a result of these Constitutional violations to Sonnier, Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages all Defendants."

### SECOND CAUSE OF ACTION
### FAILURE TO ADEQUATELY SUPERVISE OR TRAIN
### 42 U.S.C. § 1983 Violation of the Fourth Amendment
### Defendant city of Houston

79.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

### a. Failure to Train

80.     Defendant city of Houston directly caused the constitutional violations suffered by the decedent and is liable for the damages suffered as a result of the conduct of the defendant employees and/or agents of the Houston Police Department. The conduct of the

individual Defendants was a direct consequence of the policies and practices of the Houston Police Department.

81. At all times relevant to this Complaint, Defendant city of Houston, acting through its employees and/or agents and through the defendants, had policies, practices, customs and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocol for protecting with detainees with preexisting medical conditions by ignoring substantial risks of serious harm and failing to prevent harm to detainees.

82. As a result of the above-described policies and customs, the Defendant Officers believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

83. Defendant city of Houston failed to provide its employees with the proper training required to provide detainees with proper medical treatment. Defendant city of Houston did not have any adequate policies and/or training in place regarding the rendering of medical assistance to suspects in medical distress or danger of positional asphyxia. Defendant city of Houston did not have any adequate policies in place regarding the proper use of a taser, including the prohibition against tasing a suspect in the chest. The city of Houston's failure to provide adequate training to its employees regarding the need to render proper medical treatment and/or attention to injured detainees reflects deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that made the violations of Sonnier's constitutional rights, a reasonable probability.

84. Defendant city of Houston and its employees knew of the risk of harm that they were enhancing by failing to provide medical treatment and/or by delaying such treatment.

85.     Defendant city of Houston's delay in providing medical treatment reflects deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that made the violations of Sonnier's constitutional rights, a reasonable probability.

86.     The wrongful policies, practices, customs and/or usages complained of herein demonstrated a deliberate indifference on the part of the city of Houston, through its employees and agents, to the constitutional rights of persons needing medical care while in its custody and were the direct and proximate cause of the violations of Sonnier's rights alleged herein.

87.     Sonnier's injuries, and ultimately his death, were caused in substantial part by these widespread policies, practices, and procedures promulgated by the city of Houston. These policies, practices, and procedures or lack thereof, were the cause of Sonnier's death.

b. Failure to Supervise

88.     Additionally, in a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (*quoting Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998).

89.     "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.

90.     Defendant Garza, and/or another supervisor whose identity has not been disclosed by the City and HPD, was at all times acting under the color of law.

91.     Here, Defendant Garza, or another supervisor whose identity has not been disclosed by the City and HPD, failed to supervise the Defendant Officers  and John Doe Defendant Officers.

92.     First, it is clear that Defendant Garza, or another supervisor whose identify has not been disclosed by the City and HPD, was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed because the Defendant Garza was aware that Sonnier had been tased in the chest multiple times and then complained of pains in his chest and arm, was throwing up, having problems breathing and eventually unresponsive.

93.     However, despite this information, Defendant Supervisor Officer did not check on Sonnier, did not instruct the Defendant Officers to provide first aide to Sonnier until medical personnel arrived, and did not ensure that medical personnel would be there as soon as possible.

94.     As a result, Defendant Garza, or another supervisor whose identity has not been disclosed by the City and HPD, was deliberately indifferent in failing to supervise the Defendant Officers.

95.     As a result, his failure to supervise the Defendant Officers and the John Doe Defendant Officers amounted to deliberate indifference.

96.     Finally, there existed a causal link between Defendant Garza's, or another supervisor whose identity has not been disclosed by the City and HPD, failure to supervise and the violation of Sonnier's rights. *Goodman*, 571 F.3d at 395 (quoting *Smith*, 158 F.3d at 912.).

97.     Had Defendant Garza, or another supervisor whose identity has not been disclosed by the City and HPD, taken steps to ensure the Defendant Officers that Sonnier was provided with first aide and immediate medical care instead of simply ignoring his complaints and mannerisms, Sonnier would not have continued to suffer and ultimately died.

98.     As a result, (1) Defendant Garza, or another supervisor whose identify has not been disclosed by the City and HPD, failed to supervise the Defendant Officers; (2) a causal link exists between the failure to supervise and the violation of Sonnier's rights; and (3) the failure to supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395 (quoting *Smith*, 158 F.3d at 911–12).

## THIRD CAUSE OF ACTION
### EXCESSIVE FORCE
**Cause of Action against the Defendant Officers under 42 U.S.C. §1983 for violation of Sonnier's Fourth Amendment Right to be free from excessive force.**

99.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein. Plaintiffs would show that the Defendant Officers' actions on the occasion in question were excessive and wrongful in depriving Sonnier of his clearly established constitutional rights and was not objectively reasonable under the circumstances as alleged more fully below.

100.    Plaintiffs would show that at all times material hereto, the Defendant Officers had a duty to avoid infliction of unjustified bodily injury to Sonnier, to protect his bodily integrity and to not trample on his constitutional rights, including the right to be free from the use of excessive force.

101.    Plaintiffs would show that the Defendant Officers failed to act as a reasonable officer would have acted in the same or similar circumstances.  That is, Defendant Rivera, without justification and the need to do so, tased Sonnier, and the Defendant Officers forcefully kneed and punched Sonnier and placed their weight on him making it difficult for Sonnier to breathe. Sonnier was not attempting to harm or attack anyone when Defendant Rivera made the decision to repeatedly tase Sonnier for no lawful reason.  The Defendant Officers' use of

excessive force, coupled with placing Sonnier in a prone position that made it difficult to breathe, eventually resulted in Sonnier's injuries and subsequent death.

102.    The excessive force used by the Defendants Officers was not reasonable, justified nor was it necessary under the circumstances.   The Defendant Officers' actions were not objectively reasonable because they followed a procedure designed to inflict excessive force and bodily injuries in restraining individuals in a non-life-threatening situation.

103.    Further, the Defendant Officers' conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before they injured Sonnier.   At the time of the incident, the law of the Fifth Circuit was clearly established that tasing a suspect who poses no threat to the officers during the course of an arrest is an unconstitutional exercise of excessive force. *See Ramirez v. Martinez,* 716 F.3d 369, 379 (5th Cir. 2013) ("Here, Ramirez alleged he posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground, in violation of clearly established law."); *see also Clark v. Massengill,* 641 F. App'x 418, 420 (5th Cir. 2016)*; Carrol v. Ellington,* 800 F.3d 154, 177 (5th Cir. 2015)*; Guedry,* 703 F.3d 757, 763–64 (5th Cir. 2012)*; Gomez v. Chandler,* 163 F.3d 921, 922, 924–25 (5th Cir. 1999).

104.    As a direct and proximate cause of the incident as set forth herein, Sonnier incurred extreme pain and injuries for which Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages All Defendants."

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
### All Defendants

105.    Plaintiffs repeats and realleges the preceding paragraphs as if fully set forth in this

Count.

106.    Defendants owed Sonnier a duty to act reasonably, and exercise reasonable care in providing medical care to him while he was in their custody.

107.    Defendants knew or should have known that:  (a) Sonnier was seriously ill, was in a distressed situation and needed immediate medical attention; (b) ignoring his heavily labored breathing and requests to go to the hospital would be detrimental to his health; (c) Sonnier's distressed situation was evidenced by the fact that he pleaded for their help, advised that he could not breathe and had been tased in the chest,  all of which was known to the Defendants.

108.    Defendants had a legal duty to provide Sonnier with adequate medical care considering that he was in distress.

109.    Defendants negligently, grossly negligently, and/or recklessly, breached their legal duties to Sonnier, causing his death.

110.    Defendants breached their duty by failing to take Sonnier directly to a hospital; failing to provide Sonnier with adequate and reasonable medical care at the scene of the incident; and failing to adequately monitor Sonnier while he was in Defendants' custody, among other breaches of duty.

111.    Defendants' breaches of their duties were direct and proximate causes of the harm to Sonnier, and his suffering and death.

112.    Sonnier did not contribute to the Defendants' conduct set forth herein.

## FIFTH CAUSE OF ACTION
### WRONGFUL DEATH

113.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

114.     Plaintiff Meghan Sonnier is Jermaine Sonnier's mother.

115.     Plaintiff Gabriela Lavine brings this lawsuit on behalf of J.S., who is Jermaine Sonnier's Minor son.

116.     By reason of Defendants' deliberate indifference of failing to provide medical care to Sonnier and the use of excessive force, Defendants are liable for damages.

117.     To recover on a wrongful death claim under 42 U.S.C. § 1983, a plaintiff who has standing must show both (1) the alleged constitutional deprivation required by 42 U.S.C. § 1983 and (2) the causal link between the defendant's unconstitutional acts or omissions and the death of the victim.

118.     Defendants' deliberate indifference, as described herein, caused the death of Jermaine Sonnier, which violated his constitutional rights under the Fourteenth Amendment.

119.     Defendants' conduct that caused Sonnier's death was a producing cause of injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and Defendants are liable for their acts and infliction of emotional distress caused by the wrongful death of Jermaine Sonnier.

120.     Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages All Defendants."

## SIXTH CAUSE OF ACTION
### SURVIVAL ACTION

121.     Plaintiffs repeat and re-allege each and every allegation contained in the  above paragraphs as if fully repeated herein.

122.     Plaintiff Gabriela Lavine is the next friend of J.S., Sonnier's biological son. Sonnier died without a will. No administration of the Estate of Jermaine K. Sonnier is pending,

and none is necessary. J.S., through his next friend, is the sole heir of Decedent's estate. Decedent's estate has no debts at the time of his death, no real property, and no other children.

123. Jermaine Sonnier died because of the Defendants' wrongful conduct.

124. Jermaine Sonnier would have been entitled to bring this action against the Defendants if he had lived.

125. The Decedent's right of action for wrongful conduct against the Defendants survives in favor of the estate of the deceased.

126. The Defendants are liable to the Estate of the deceased for the loss of Jermaine Sonnier's life, pain and suffering, and the violation of his civil rights.

127. Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages All Defendants."

## VI.

## DAMAGES ALL DEFENDANTS

128. **Actual damages.** Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

129. Defendants' acts and/or omissions were a proximate cause of the following actual damages suffered by Plaintiffs, and Defendants should be held jointly and severally liable for the following damages:

**a.** **Estate of Jermaine Sonnier (Survival Claim).**
1. Conscious pain and mental anguish suffered by Jermaine Sonnier prior to his death;
2. Funeral and burial expenses; and
3. Exemplary Damages.

**b.**     **Meghan Sonnier Simms (as wrongful death beneficiary of Jermaine Sonnier).**

1.     Mental anguish—the emotional pain, torment, and suffering experienced by Meghan Sonnier Simms because of the death of Jermaine Sonnier—that Meghan Sonnier Simms sustained in the past and that she will, in reasonable probability, sustain in the future;

2.     Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Meghan Sonnier Simms would have received from Jermaine Sonnier had he lived—that Meghan Sonnier Simms sustained in the past and that she will, in reasonable probability, sustain in the future;

3.     Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Meghan Sonnier Simms would have received from Jermaine Sonnier had he lived—that Meghan Sonnier Simms sustained in the past and that she will, in reasonable probability will sustain in the future.

4.     Pre- and post-judgment interest at the highest rate permitted by State and Federal law.

**c.**     **Gabriela Lavine, as next friend of J.S. (as wrongful death beneficiaries of Jermaine Sonnier).**

1.     Mental anguish—the emotional pain, torment, and suffering experienced by J.S. because of the death of Jermaine Sonnier—that J.S. sustained in the past and that he will, in reasonable probability, sustain in the future;

2.     Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that J.S. would have received from Jermaine Sonnier had he lived—that J.S. sustained in the past and that he will, in reasonable probability, sustain in the future;

3.     Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that J.S. would have received from Jermaine Sonnier had he lived—that J.S. sustained in the past and that he will, in reasonable probability will sustain in the future.

4.     Pre- and post-judgment interest at the highest rate permitted by State and Federal law.

130.     **Punitive/Exemplary Damages against Defendant Officers.**  Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of the Defendant Officers was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Sonnier.  As such, the Plaintiffs request punitive and exemplary damages to deter this type of

conduct in the future.

131.    Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.
## COSTS AND ATTORNEY FEES

132.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.  Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiffs request the Court to award costs and attorney fees incurred in the Plaintiffs' prosecution of this litigation.


Respectfully submitted,


By: /s/ DARYL K. WASHINGTON
    Daryl K. Washington
    State Bar No. 24013714
    WASHINGTON LAW FIRM, PC
    325 N. St. Paul St., Suite 3950
    Dallas, Texas 75201
    214-880-4883
    214-751-6685 - fax
    Email: dwashington@dwashlawfirm.com

    **ATTORNEYS FOR PLAINTIFFS**