**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MEGHAN SONNIER SIMMS, individually** | § | |
| **and GABRIELA LAVINE as Next** | § | |
| **Friend of Minor J.S. and on behalf of the** | § | |
| **Estate of JERMAINE K. SONNIER,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:23-cv-2004** |
| | § | |
| **JERRY RIVERA, FNU SCHAD,** | § | |
| **ANTHONY JACKSON, GARRETT** | § | |
| **PULATIE, PERRY FENOGLIO,** | § | |
| **WILLIAM KEEFE, ERIC** | § | |
| **MALDONADO, JOSEPH BRAVO,** | § | |
| **TAYLOR PEACOCK, FNU GARZA,** | § | |
| **CITY OF HOUSTON, TEXAS, JOHN** | § | |
| **DOE POLICE OFFICER 1, and** | § | |
| **JOHN DOE FIRE DEPARTMENT** | § | |
| **OFFICERS 1-5,** | § | |
| *Defendants*. | § | |

**DEFENDANT OFFICERS' MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Officers Eric Maldonado ("Maldonado"), Anthony Jackson ("Jackson"), Taylor Peacock ("Peacock"), Perry Fenoglio ("Fenoglio"), William Keefe ("Keefe"), Jerry Rivera ("Rivera"), Joseph Bravo ("Bravo"), and Garrett Pulatie ("Pulatie"), (collectively, "Defendant Officers") file this Motion to Dismiss the Amended Complaint of Plaintiffs [Doc.# 8], pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully show the following in support:

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

1.      Plaintiffs, Meghan Sonnier Simms, the alleged mother of Jermaine K. Sonnier (the deceased), Gabriela Lavine as next friend of J.S. the minor son of the deceased, and the Estate of

the deceased ("Plaintiffs") sued City of Houston ("Houston"), various Houston Police Department ("HPD") Officers, and various unnamed Houston Fire Department ("HFD") Officers for certain alleged constitutional violations and negligence under Texas wrongful death and survival statutes when Mr. Jermaine K. Sonnier died after an "Encounter with the Defendant Officers" [Doc. #8 at IV; pg. 9]. Plaintiffs have filed four (4) complaints in this case: an original [Doc. #1], a corrected original [Doc. #2], a first amended complaint [Doc. #4], and a second and current "First Amended Complaint" [Doc. #8]. At no time does it appear that Plaintiffs moved the Court for leave to amend.

2.      As a result of the alleged incident, Plaintiffs assert six "causes of action" in their complaint. [Doc. #8 at pgs. 16-28] Of these, only three are directed at the Defendant Officers, who were uniformed HPD officers at the time of this incident. First, Plaintiffs allege 42 U.S.C. § 1983 against the Defendant Officers for deliberate indifference to medical needs [Doc. #8 at ¶¶ 57-78]. Second, Plaintiffs allege excessive force against the Defendant Officers. [Doc. #8 at ¶¶ 99-104]. Third, Plaintiffs assert unspecified negligence against the Defendant Officers. [Doc. #8 at ¶¶ 105-112]. Other than the general assertions of wrongful death stated as the fourth cause of action against all Defendants [Doc. #8 at ¶¶ 113-120] and a survival action stated as the sixth cause of action against all Defendants [Doc. #8 at ¶¶ 121-127], these are the ONLY claims brought against these Defendant Officers.

3.      For the reasons stated herein, the Defendant Officers move to dismiss all claims against them with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

**STATEMENT OF ISSUES**

1. Plaintiffs' claims against the individual officers in their official capacity, if any, must be dismissed as redundant.

2. Plaintiffs' state law tort claims against Defendant Officers must be dismissed.

3.  Plaintiffs fail to plausibly allege a constitutional violation to support a § 1983 claim.

4.  Plaintiffs fail to overcome the Defendant Officers' qualified immunity in light of clearly established law.

5.  As to each of the individual Defendant Officers, Plaintiffs failed to assert sufficient facts to establish any liability, and for six of the Defendant Officers, Plaintiffs assert NO specific facts alleging liability or wrongful acts.

6.  Plaintiffs have not demonstrated capacity and standing to sue.

## SUMMARY OF THE ARGUMENT

4.      Plaintiffs allege three causes of action against the Defendant Officers for deliberate indifference to medical needs [Doc. #8 at ¶¶ 57-78], excessive force [Doc. #8 at ¶¶ 99-104], and unspecified negligence [Doc. #8 at ¶¶ 105-112]. Plaintiffs also make a general assertion of wrongful death [Doc. #8 at ¶¶ 113-120] and survival action against all Defendants [Doc. #8 at ¶¶ 121-127]. These Defendant Officers move to dismiss all claims against them with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

5.      First and it is unclear in their complaint, Plaintiffs may not sue Defendant Officers in their individual and official capacities, as those official capacity claims are redundant to Plaintiffs' claims against Houston. Second, Plaintiffs allege liability for unspecified negligent state claims under the Texas Tot Claims Act ("TTCA"), but Plaintiffs have elected to pursue their remedies against Houston and may not sue the Defendant Officers for tort claims arising from the same incident. Further, Plaintiffs assert that Defendant Officers were acting within the scope of their employment as "officials" with HPD. [Doc. #8 at ¶¶ 59, 62, and 64]. Therefore, all state law tort claims against these Defendant Officers should be dismissed. Third, Plaintiffs' claims against Defendant Officers under 42 U.S.C. § 1983 for refusal to provide medical attention and excessive force are largely unascertainable, not supported by any facts, conclusory, and contradicted by the very video of the incident, which Plaintiffs repeatedly quote and rely upon as central throughout their

complaint. Plaintiffs' complaint is completely silent as to any acts or omissions by Defendant Officers Pulatie, Fenoglio, Keefe, Peacock, Jackson, Maldonado, and Bravo. A complaint that lacks <u>any</u> factual assertion directed to the individually named Defendants fails to state a claim as to that Defendant. For this reason alone, Pulatie, Fenoglio, Peacock, Jackson, Keefe, Maldonado, and Bravo are entitled to dismissals. Plaintiffs' assertion that Officer Rivera "tackled Sonnier…punched him…placed him into a prone position…" and tased him [Doc. #8 at ⁋⁋ 31-35 and 101] is based solely on the speculative and conclusory allegation that at that time "Sonnier was not resisting…" [Doc. #8 at ⁋ 44]. This assertion is not supported by Plaintiffs' own complaint, which admits Sonnier was moving [Doc. #8 at ⁋ 33]. More importantly, it is directly contradicted by the body worn camera video footage of this incident ("BWC") that is before this Court for its consideration.  Exhibit 1, attached hereto and incorporated herein through notice of conventional filing.[1]

6.    Most importantly, the alleged facts do not support any claim that could overcome Defendant Officers' qualified immunity in light of clearly established law. Specifically, Plaintiffs admit that Mr. Sonnier ran from police, a foot chase ensured, and it ended when the HPD officers tackled Mr. Sonnier. [Doc. #8 at ⁋ 30]. Plaintiffs further state that the officers issued various commands "put your hands behind your back…" [Doc. #8 at ⁋ 36], "walk to the patrol car" [Doc. #8 at ⁋ 38], "get in the car." [Doc. #8 at ⁋ 41]. While "at least four officers [were] on top of Sonnier[,]" Mr. Sonnier was still moving. [Doc. #8 at ⁋ 33]. Plaintiffs' complaint, asserting that Mr. Sonnier was not resisting, is in direct contradiction to these admissions by Plaintiffs and to the body BWC. Moreover, the complaint improperly concludes and speculates that Mr. Sonnier's "movement" was "not resisting" but was "his attempt to breathe…" [Doc. #8 at ⁋⁋ 33 and 32].

---

[1] Exhibit 1 is the CD/DVD of the incident served to Plaintiffs and provided to the Clerk of the Court via Notice of Conventional Filing (herein after referenced as "Exhibit 1" and/or "BWC".

Plaintiffs' false and unsupported conclusory statements, peppered throughout their complaint, are contradicted by the BWC.

## STANDARD FOR REVIEW 12(b)(6)

### 1. Requirement of Sufficient Factual Content

7.      Pursuant to Rule 12(b)(6), an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly* 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

8.      Although the court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff, the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions," *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual conclusions cannot prevent dismissal. *Twombly*, 550 U.S. at 544; *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."). Dismissal is appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624

(5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499.)

9.      In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* 556 U.S. at 679. Although required to accept all "well-pleaded facts" as true, the court is not required to accept legal conclusions as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Iqbal*, 556 U.S. at 677-78, 680. Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 678. That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## 2.  Court's Consideration of the Video of the Incident when cited and central to Plaintiffs' Complaint

10.     In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the court considers (1) the well pleaded facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005). The court may also properly consider documents attached to the defendant's motion, that are referred to in the complaint, and/or are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "In so

attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Covington v. City of Madisonville,* 812 F. App'x 219, 224 (5th Cir. 2020) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Circ. 2000)).  *See O'Donnell v. Century Sur. Co.*, No. 21-2290, 2022 U.S. Dist. LEXIS 79755 at *9 (E.D. La. 2022).[3]

## QUALIFIED IMMUNITY

11.    Governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). On a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012), *overruled in part on other grounds by Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022), *amended on denial of reh'g by* __ F.4th __, No. 21-10171, 2022 U.S. App. LEXIS 33072 at *8-9 (Dec. 1, 2022) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). "The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without any discovery."  *Carswell*, 2022 U.S. App. LEXIS 33072 at *8-9.

> When defendants assert qualified immunity in a motion to dismiss, the district court may not defer ruling on that assertion.  It may not permit discovery—"cabined or otherwise"—against immunity-asserting defendants before it has determined plaintiffs have pleaded facts sufficient to overcome the defense.  Ibid.  The rule is that "a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation"—full stop.  Ramirez, 3 F.4th at 133 (citing Mitchell, 472 U.S. at 526-27).

---

[3] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing FED. R. EVID. 201(f)).

Carswell, LEXIS 33072 at *10. Thus, Plaintiffs bear the burden to overcome Defendant Officers' qualified immunity and must plead, without discovery, specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. See also *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 (5th Cir. 1992); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam).

12.    A qualified immunity defense includes two inquiries. First, whether the officer violated a constitutional right. *Henderson*, 51 F.4th at 132. Second, whether the right at issue was clearly established at the time of the alleged misconduct. *Id.* (citing *Morrow*, 917 F.3d at 874). The court can decide one question or both. *Henderson*, 51 F.4th at 132. To show clearly established law, a plaintiff has two paths: (A) he can identify an on-point case, or (B) he can satisfy the obvious-case exception. *Id.* (citing *Salazar*, 37 F.4th at 285-86).

### ARGUMENTS AND AUTHORITIES

1. **Plaintiffs' claims, if any, against the individual officers in their official capacities must be dismissed as redundant.**

13.    It is well-settled that claims asserted against government officials in their official capacity are really against the governmental entity. *Chavez v. Alvarado*, CV H-21-867, 2021 WL 3089289, at *5 (S.D. Tex. July 22, 2021); *Max-George v. Houston Police Dep't*, CV H-17-2264, 2020 WL 6322283, at *4 (S.D. Tex. Oct. 28, 2020); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999); *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011); ("Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer"). Accordingly, because Plaintiffs have also asserted claims against Houston, Plaintiffs' claims against the officers in their official capacities, if any, should be dismissed as redundant. *Chavez*, 2021 WL 3089289, at *5; *Foerster v. Bleess*, 4:20-CV-1782, 2020 WL

6588731, at *5 (S.D. Tex. Oct. 16, 2020) (citing *Goodman v. Harris County,* 571 F.3d 388, 395 (5th Cir. 2009)).

### 2. Plaintiffs' state law tort claims against Defendant Officers must be dismissed.

14.     Plaintiffs' tort claims should be dismissed for two independent reasons. First, under section 101.106 of the TTCA, Plaintiffs may not sue Defendant Officers and the City of Houston for tort claims arising from the same action. Second, Plaintiffs judicially admit that, at all relevant times, Defendant Officers were within the scope of their employment as Plaintiffs assert that Defendant Officers were acting within the scope of their employment as "officials" with HPD. [Doc. #8 at ¶¶ 59, 62, and 64]. Therefore, under section 101.106(f) of the TTCA[4], Plaintiffs claims against the officers must be dismissed. *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011) "[A]ll common-law tort theories alleged against a governmental unit are assumed to be 'under the [Texas] Tort Claims Act' for purposes of section 101.106."[5] An employee is covered by the TTCA regarding the performance of the duties of the employee's office or employment. Tex. Civ. Prac. & Rem. Code § 101.001(5).

### 3. Plaintiffs fail to plausibly allege a constitutional violation to support a § 1983 claim.

15.     To state a claim under 42 U.S.C.S. § 1983, a plaintiff must demonstrate first, a violation of the U.S. Constitution or of federal law; and second, that the violation was committed by someone acting under color of state law. *O'Dwyer v. Nelson*, 310 F. App'x 741, 742 (5th Cir. 2009). The Fifth Circuit heightened pleading standard for suits under 42 U.S.C.S. § 1983 against

---

[4] Dismissal is required under section 101.106(f), because Plaintiff's allegations involve Defendant Officers' actions in the general scope of their employment and authority as police officers for the City of Houston. *See Smith v. Heap*, 31 F.4th 905 (U.S. 5th Cir. 2022) (Tex. Civ. Prac. & Rem. Code Ann. § 101.106 precluded a constable from another constable's defamation and intentional infliction of emotional distress claims because the other constable named both the constable and the county as Defendant Officers and the constable's job responsibilities were linked to the alleged torts); *Garza v. Harrison*, 574 S.W.3d 389, 406 (Tex. 2019) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008)).
[5] *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 161 (5th Cir. 2017) (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011)).

public officials requires claims of specific conduct and actions giving rise to a constitutional violation. *Baker v. Putnal*, 75 F.3d 190, 193 (5th Cir. 1996). Complaints in a section 1983 action subject to the defense of qualified immunity must be pled with "factual detail and particularity." *See Schultea v. Wood*, 47 F.3d 1427, 1428 (5th Cir. 1995); *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). Moreover, the Plaintiff bears the burden of negating a defendant's invocation of qualified immunity. *Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016). In addition, it is axiomatic that, in order to state a claim against an individual government official defendant, a Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676; see *Hernandez v. Duncanville Sch. Dist.*, No. 3:04-CV-2028, 2005 U.S. Dist. LEXIS 5090, 2005 WL 723458, at *9 (N.D. Tex. Mar. 29, 2005) (holding that, in order to state claim against an individual governmental actor, a plaintiff must "state specifically how [each governmental official] took actions that deprived [the plaintiff] of a constitutionally or statutorily protected right, and state specifically how the conduct of each caused [the plaintiff's] injuries."). *Ready v. Itawamba Cty.,* No. 1:20-cv-00160-GHD-DAS, 2022 U.S. Dist. Lexis 5119, at *7-8 (N.D. Miss.2022).

16.     Here, Plaintiffs' alleged Fourteenth Amendment violation for deliberate indifference to medical needs and Fourth Amendment violation for excessive force are conclusory, unsupported, and in direct contradiction to the video of the incident. Exhibit 1. Plaintiffs' complaint is COMPLETELY SILENT as to any acts or omissions by Defendant Officers Pulatie, Fenoglio, Keefe, Maldonado, and Bravo.  Nowhere in their complaint are these Defendant Officers even mentioned except in the first unnumbered, introductory paragraph and in the paragraphs where they are identified as "parties" for purposes of service. [Doc. #8 at pg. 1 and ¶¶ 14- 22]. Clearly, a complaint that lacks <u>any</u> factual assertion addressed to an individually named Defendant

fails to state a claim as to that Defendant. For this reason alone, Pulatie, Fenoglio, Keefe, Maldonado, and Bravo are entitled to dismissals. Plaintiffs' failure to assert acts or omissions also apply to Officer Peacock. Other than the introductory paragraph and the party-identification and service paragraph, Peacock's name does appear in one additional location in the complaint, where Plaintiffs assert, "Defendant Officer Peacock and/or the Fire Department Officer Defendants chose not to transport Sonnier to the hospital with a paramedic present in the ambulance." [Doc. #8 at ¶ 48]. This single assertion that "Peacock and/or 'HFD' chose not to transport Sonnier" is legally and factually insufficient to state any claims against Peacock. Similarly, Officer Jackson's name appears in only one additional location in the complaint, where Plaintiffs assert, "Defendant Jackson did not however, offer any medical assistance or first aid to Sonnier even though he was in medical distress." [Doc. #8 at ¶ 44]. This, too, is insufficient to allege a claim against Jackson. Finally, Plaintiffs assert that Officer Rivera "tackled Sonnier…punched him…placed him into a prone position…" and tased him. [Doc. #8 at ¶¶ 31-35 and 101]. The alleged impropriety of these acts by Rivera, is based solely on the speculative and conclusory allegation that "Sonnier was not resisting…" [Doc. #8 at ¶ 44]. This assertion is not supported by Plaintiffs' own complaint, which admits Sonnier was moving [Doc. #8 at ¶ 33]. More importantly it is directly contradicted by the BWC that is before this Court. Plaintiffs simply do not plausibly allege any facts to support Mr. Sonnier's rights were violated under the United States Constitution, and moreover, Plaintiffs fail to identify factual support as to each of the named individual Defendant Officers.

### A.  No Fourteenth Amendment violation.

17.    Plaintiffs assert a Fourteenth Amendment violation without any factual support. In order to establish a Fourteenth Amendment violation, Plaintiffs must establish that (1) there is not a more definite provision of the Constitution that governs the claim and (2) that the allegations are sufficient to state a substantive due process violation through executive abuse of power. *County of*

*Sacramento v. Lewis,* 523 U.S. 833, 841-42 (1998). "The Due Process Clause of the Fourteenth Amendment guarantees that a person detained by police is entitled to medical care." *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010) (not designated for publication); *see Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) ("After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment."). "Violation of that right by deliberate indifference to serious illness or injury is actionable under § 1983. Deliberate indifference encompasses only "unnecessary and wanton infliction of pain" or acts "repugnant to the conscience of mankind." *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

18.    The Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *McClendon v. City of Columbia,* 305 F.3d 314, 326 (5th Cir. 2002) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 848 (1998). However, an officer's deliberate indifference to a serious injury violates that right. *Carter*, 399 F. App'x at 942. Meeting this standard requires showing that the officer was "aware of a substantial and significant risk . . . but effectively disregarded it." *Jacobs v. West Feliciana Sheriff's Dep't*, 229 F.3d 388, 395 (5th Cir. 2000). To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). Deliberate indifference is an extremely high standard to meet." *Id*. Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response. *Id.* at 381. Deliberate indifference requires egregious conduct. *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021).

However, a deliberate indifference standard is only appropriate "when actual deliberation is practical." *Lewis,* 523 U.S. at 851; see *Whitley v. Albers,* 475 U.S. 312, 320 (1986). And the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference claim. *Dyer*, 964 F.3d at 381.

19.      Here, Plaintiffs cannot and have not established that Defendant Officers deprived Mr. Sonnier of any right to medical care. First and as discussed above, no individual Defendant Officer is identified as having an awareness of facts that a substantial risk of serious harm existed, and no individual Defendant Officer is identified as actually having drawn that inference. *Dyer v. Houston* 964 F.3d 374 (5th Cir. 2020). Moreover, Plaintiffs have neither identified nor pleaded any specific facts to support that Defendant Officers Jackson, Pulatie, Fenoglio, Keefe, Maldonado, Peacock, Rivera, and/or Bravo deprived Mr. Sonnier of medical care. Third, Plaintiffs admit that the Officers called HFD.  They allege that HFD arrived at the scene "twenty minutes after Sonnier was tackled…" [Doc. #8 at ⁋ 46]. So, HFD was called to the scene, and Plaintiffs fail to state any claim that the Defendant Officers DID NOT CALL HFD to the scene or that any Defendant Officer prevented HFD from timely rendering aid or transport.  Fourth, the BWC demonstrates that the Defendant Officers never had the opportunity to provide any medical care to Mr. Sonnier as they tried to gain control over him between chasing and tackling Mr. Sonnier and HFD's arrival because Mr. Sonnier resisted officers and refused to comply with Defendant Officers' commands to:

 "He's running" 2:15 BWC
"Put your hands behind your back" 2:30 BWC
"Roll over" 2:38 BWC
"Roll over" 2:39 BWC
"Roll over" 2:42 BWC
"Roll over" 2:43 BWC
"Roll over" 2:44 BWC
"Roll over, now" 2:45 BWC
"Put your hands behind your back," 2:46 BWC
"Put your hands behind your back," 3:00 BWC

13

"Put your hands behind your back, now" 3:01 BWC

"Put your hands behind your back or I', going to hit you," 3:04 BWC
"Put your hands behind your back," 3:09 BWC
"Comply!" 3:16 BWC
"Comply!" 3:18 BWC
"Give your f***ing hands up" 3:32 BWC
"Give your f***ing hands up" 3:35 BWC
"Stop and comply, man" 3:45 BWC
"Stop" 3:54 BWC
"stop" 3:55 BWC
"Will you comply please?" 4:04 BWC
"Stop moving"  4:06 BWC
"Stop moving" 4:12 BWC
 "Stop" 4:17 BWC
"Do we have leg restraints?" 4:25 BWC
"Quit fighting" 4:27 BWC
"We need a unit with leg restraints 4:35 BWC,
"If you would comply this would end" 4:49 BWC
"Quit fighting" 4:56 BWC
"Quit fighting" 5:01 BWC
"Stop" 5:02 BWC
"Stop" 5:03 BWC
"Get him to the car" 5:14 BWC

Exhibit 1

20.     The BWC shows, that in the pouring rain, the officers struggled to get control over

Sonnier and had no idea if he possessed weapons or presented other dangers until they could get

him under control and perform a pat-down search of his body and clothing. Until then, these

officers "had no way of knowing what direction matters would take…, but they had ample reason

to believe that these options presented unacceptable risks." *Whitley,* 475 U.S. at 323. Defendant

Officers' "instinct was to do [their] job as [] law enforcement officer[s], not to

induce. . .lawlessness, or to terrorize, cause harm, or kill." *Lewis,* 523 U.S. at 855. The BWC is

quoted throughout the complaint and are central to Plaintiffs' allegations; thus, the BWC can be

and should be considered by this Court.  A court should not rely on visible fiction [i.e., plaintiff's

version of events]; it should view the facts in light depicted by the video. *See Fuentes v. Riggle*,

611 Fed. Appx. 183, 190 (5th Cir. 2015); *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729 (5th Cir. 2018).

21.     Finally, there are no alleged facts that support that Defendant Officers' actions "were tainted by an improper or malicious motive." *Id.* For these many reasons, Plaintiffs' claims for failure to render medical aid as a Fourteenth Amendment violation against these Defendant Officers must be dismissed.

### B.  No Fourth Amendment Violation for Excessive Force

22.     To state an excessive force claim in violation of the Fourth Amendment, Plaintiff must allege facts demonstrating an "injury that results directly and only from a clearly excessive and objectively unreasonable use of force" by the individual defendant.  *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The objective reasonableness of the force depends on the facts and circumstances of the particular case—the need for force determines how much force is constitutionally permissible." *Hogan v. Cunningham*, 722 F.3d 725, 734 n.25 (5th Cir. 2013) (citing *Ikerd*, 101 F.3d at 434-35). The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). The Supreme Court explained in *Graham v. Connor*,

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation

*Hogan*, 722 F.3d at 734 (quoting *Graham*, 490 U.S. at 396). "Only the objective reasonableness of the force is considered; an officer's subjective intent is irrelevant." *Id.* (citation omitted). "Use

of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine,* 333 F.3d 621, 624 (5th Cir. 2003); *Cloud v. Stone,* 993 F.3d 379, 387 (5th Cir. 2021) (citations omitted).

23.     Here and as discussed above at paragraph 16, Plaintiffs have neither identified nor pleaded any use of force by Defendant Officers Jackson, Pulatie, Fenoglio, Keefe, Maldonado, Peacock and/or Bravo. For this reason alone, they are entitled to a dismissal for Plaintiffs' excessive-force-claims.  As for Rivera's alleged tackle, punch and tasering of Mr. Sonnier, these are all premised on Plaintiffs' unsupported allegation that Mr. Sonnier was not resisting. [Doc. #8 at ¶¶ 31-35 and 101]. First, this speculative and conclusory allegation of non-resistance should not be considered by this Court. *Twombly*, 550 U.S. at 544; *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Second Plaintiffs' non-resistant-allegation is controverted by Plaintiffs' own admission of Sonnier's "movement," which occurred while "at least four officers [were] on top of Sonnier…" [Doc. #8 at ¶¶ 33 and 32]. Plaintiffs' complaint, therefore, affirmatively pleads facts to support that Defendant Officers could have reasonably believed Mr. Sonnier had or was reaching for a weapon while resisting and/or moving. These facts alone present probable cause to believe Mr. Sonnier posed a threat of serious physical harm, either to the officer or to others, and justifying the non-lethal force used in this case and up to lethal force. *See e.g., Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) ("If Young's movements gave Olson cause to believe that there was a threat of serious physical harm, Olson's use of deadly force was not a constitutional violation."); *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (reviewing several precedents in which the Fifth Circuit had "found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's

line of sight such that the officer could reasonably believe the suspect was reaching for a weapon.")
(citations omitted). Here, Plaintiffs do not allege any use of deadly force.

24.     Further, the BWC portrays the officers trying to get control of Mr. Sonnier by
issuing commands that went unobeyed and by physical attempts to handcuff Mr. Sonnier.
Plaintiffs never allege that excessive force was used after Mr. Sonnier was under control and/or in
custody. This supports the reasonableness of Defendant Officer's assessment of the totality of the
circumstances. Plaintiffs' complaint does not plausibly establish that ***no reasonable officer*** could
have believed Mr. Sonnier's conduct "posed a threat of serious harm" or escape; therefore,
Plaintiffs fail to state an excessive force claim for which relief may be granted. *See Manis*, 585
F.3d at 845. Dismissal of any alleged Fourth Amendment claim is warranted.

25.     In *Salazar v. Molina*, 37 F.4th 278, 285-86 (5th Cir. 2022), after a high-speed car
chase, the suspect stopped, dropped to his knees with hands up, then lay prone on the ground with
legs crossed. *Salazar*, 37 F.4th at 285-86. As the officer approached, the suspect uncrossed his
legs. *Id.* The officer tased him. *Id.* The suspect claimed tasing was excessive because he was
surrendering. *Id.* The district court agreed. *Id.* The Fifth Circuit reversed:

> Where a suspect put officers and bystanders in harm's way to try to evade
> capture, it was reasonable for officers to question whether the suspect's
> purported surrender was a ploy, and that was especially true when he was
> unrestrained, in close proximity to the officers, and potentially in possession
> of a weapon.

*Id.*

### 4.  Plaintiffs fail to overcome Defendant Officers' qualified immunity in light of clearly established law.

26.     The Supreme Court has continually found it "necessary to reiterate the longstanding
principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White
v. Pauly*, 137 S. Ct. 548, 552 (2017) (multiple citations and quotations omitted). *See also Cole v.*

17

*Carson*, 935 F.3d 444, 473 (5th Cir. 2019) (en banc) (Ho & Oldham, JJ., dissenting) (noting thirteen cases in the last sixteen years in which the Supreme Court applied the "extraordinary remedy of a summary reversal" to correct failures to identify clearly established law with specificity). "The hurdle is even higher when the plaintiff alleges a Fourth Amendment violation." *Henderson*, 51 F.4th at 135. Excessive force claims in particular "are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity." *Mohamed v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 894 (N.D. Tex. 2018) (quoting *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 383 n.1 (5th Cir. 2009)). "[I]n excessive-force cases requiring split-second judgments, it is 'especially difficult' to overcome qualified immunity. That is because [] it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Henderson*, 51 F.4th at 135 (citations omitted). "[Q]ualified immunity protects actions in the hazy border between excessive and acceptable force." *Mullenix v. Luna*, 577 U.S. 7 (2015). Thus, Plaintiff must demonstrate that the law is "*so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." *Henderson*, 51 F.4th at 135 (quoting *Morrow*, 917 F.3d at 875).

27.     Plaintiffs have not alleged a violation of clearly established law by Defendant Officers. Plaintiffs did not and cannot identify a case or body of precedential case law in effect prior to the incident holding that an officer violated the constitution under the factual pattern asserted in this incident. The *Henderson* Court dismissed an excessive force claim by a fleeing suspect who suddenly stopped and moved his arms in a manner suggesting he might be reaching for a weapon. *Henderson*, 51 F.4th at 135. Here, Plaintiffs admit that the officers issued commands to Mr. Sonnier to "put your hands behind our back or I'm going to hit you." [Doc. #8 at ⁋ 36].

18

Plaintiffs admit officers stated, "you can walk [to the patrol car] or get dragged, its your choice." [Doc. #8 at ⁋ 38]. On the BWC, countless commands were issued by the officers, as discussed above. Therefore, even if a constitutional violation occurred it would not be a violation of clearly established law.[6]

**5.  Plaintiffs lack capacity and standing to sue.**

28.    "It is well recognized that there is no common law right to recover for the wrongful death of another." *Taylor v. Parr*, 678 S.W.2d 527, 529 (Tex. App—Houston [14th Dist.] 1984, writ. ref'd.). This right exists in Texas only through our Wrongful Death statute. *Taylor v. Parr*, 678 S.W.2d at 529 (citing *Duhart v. State*, 610 S.W.2d 740, 742 n. 2 (Tex.1980)). Under the Wrongful Death Act, beneficiaries may pursue a cause of action "only if the individual injured would have been entitled to bring an action for the injury if the individual had lived." TEX. CIV. PRAC. & REM. CODE § 71.003(a). "The Legislature enacted the Wrongful Death Act in order to create a cause of action to allow a deceased tort victim's surviving parents, children, and spouse to recover damages for *their losses* from the victim's death." *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998); see TEX. CIV. PRAC. & REM. CODE ANN.§§ 71.002–.004.

29.    In their amended complaint, Plaintiffs allege "survival action on behalf of the Estate of Jermaine Sonnier..." [Doc. #8 at ⁋ 11]. Only a personal representative or an heir, who proves she has the capacity or legal right to bring survival action on behalf of the decedent's estate can bring suit. *Austin Nursing Ctr.,Inc. v. Lovato,* 171 S.W.3d 845, 851 n.3 (Tex.2005). Plaintiffs' amended complaint not only fails to satisfy this requirement but alleges that Gabriela Lavine brings

---

[6] *See Smith v. Heap*, 31 F.4th 905 (U.S. 5th Cir. 2022) (Tex. Civ. Prac. & Rem. Code Ann. § 101.106 precluded a constable from another constable's defamation and intentional infliction of emotional distress claims because the other constable named both the constable and the county as defendants and the constable's job responsibilities were linked to the alleged torts).

this "survival action on behalf of the Estate of Jermaine Sonnier..." [Doc. #8 at ₱ 11]. If Gabriela Lavine is acting as a personal representative of the estate then she must present (1) testamentary letters showing appointment as executor, independent executor, administrator, independent administrator or (2) other evidence of appointment Tex. Est. Code § 306.007 (formerly Tex. Prob. Code Section 186). If a Plaintiff is bringing survival claims on behalf of the estate as an heir, she needs to (1) establish that no administration is pending, and none is necessary or (2) the personal representative cannot and will not bring suit. *See Austin Nursing Ctr.*, 171 S.W. 3d at 851 and *Shepherd v. Ledford*, 962 S.W. 2d 28 (Tex.1998). Plaintiffs fail to satisfy their burden in this regard and fail state both a constitutional violation and a negligence claim to support their wrongful death action.

## CONCLUSION AND PRAYER

30.    For the reasons stated, Plaintiffs have failed to state a claim upon which relief can be granted against Defendant Officers Eric Maldonado, Anthony Jackson, Taylor Peacock, Perry Fenoglio, William Keefe, Jerry Rivera, Joseph Bravo, and Garrett Pulatie, and further opportunities to amend would be futile. Defendant Officers respectfully pray that the honorable Court grant this motion and dismiss with prejudice Plaintiffs' claims against them and grant all other relief to which Defendant Officers may be entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

Date:  August 1, 2023           By:   */s/ Kelly Dempsey*
                                                            _____
                                                            KELLY DEMPSEY
                                                            Chief, Torts/Civil Rights
                                                            ATTORNEY IN CHARGE
                                                            SBN:  00789253
                                                            FBN:  17969
                                                            832.393.6450

kelly.dempsey@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

***Attorneys for Defendant Officers***

## Certificate of Service

I hereby certify that on this 1st day of August 2023, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-mail and/or facsimile transmission, or certified mail, return-receipt requested, to:

Daryl K. Washington
Washington Law Firm, PC
325 N. St. Paul St., Suite 3950
Dallas, TX 75201

Debra V. Jennings
Law Office of Debra Jennings
6140 Hwy. 6, Suite 269
Missouri City, TX 77459

*/s/ Kelly A. Dempsey*
Kelly A. Dempsey