United States District Court
Southern District of Texas
**ENTERED**
February 12, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MEGHAN SONNIER SIMMS,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 4:23-CV-02004** |
| | § | |
| **JERRY RIVERS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM & ORDER</u>

This is a § 1983 case brought by Plaintiffs Meghan Sonnier Simms, individually, and Gabriela Lavine, as Next Friend of Minor J.S. and on behalf of the Estate of Jermaine K. Sonnier. It is brought against Houston Police Officers Jerry Rivera, Anthony Jackson, Garrett Pulatie, Perry Fenoglio, William Keefe, Eric Maldonado, Joseph Bravo, and Taylor Peacock (collectively "Officers"); Houston Firefighters Nicolas Dahl, Vincent Garcia, Sean Dailey, Jessica Smith, Derek Leferink, Christopher Finlan, and Hernan Armendariz (collectively "Firefighters"); and the City of Houston ("the City").

Before the Court are the Officers' Motion to Dismiss, ECF No. 30, and the City's Motion to Dismiss, ECF No. 29. For the reasons that follow, the Court finds that the Officers' Motion to Dismiss should be **DENIED** and City's Motion to Dismiss should be **GRANTED**.

1

## I.    BACKGROUND[1]

On June 16, 2021, Jermaine K. Sonnier, a 19-year-old boy, was going with a friend to get her car washed. ECF No. 23 ¶ 33. They were approached by a plain-clothes officer and a second officer in an unmarked truck, neither of whom identified themselves as police. *Id.* Unaware that they were police officers, Sonnier ran. *Id.* The officers pursued Sonnier on foot for approximately one minute. *Id.* When they caught up to Sonnier, Officers Rivera and Pulatie tackled Sonnier to the ground. *Id.* ¶ 34. Despite the fact that Sonnier was unarmed and not resisting, Pulatie repeatedly punched Sonnier's head and shoulder area. *Id.* ¶¶ 3, 34. They then placed Sonnier in a prone position, and, without warning, Rivera tased Sonnier's bare chest. *Id.* ¶¶ 34-37. Although Sonnier was not resisting, Rivera continued to deploy his taser. *Id.* ¶¶ 35, 37. Subsequently, Pulatie, Fenoglio, Keefe, Maldonado, Bravo, and Peacock each knelt on Sonnier's back and neck while he lay face down, the force of which made it difficult for him to breath. *Id* ¶ 35. Sonnier repeatedly told officers that he could not breathe. *Id.* ¶ 35, 42, 43.

Jackson and Maldonado then attempted to get Sonnier to a police vehicle, with Jackson threatening to drag Sonnier if he did not get up and walk. *Id.* ¶ 40-41. Sonnier attempted to stand, but immediately fell back down. *Id.* ¶ 41. Sonnier began to throw up and have a panic attack. *Id.* Nonetheless, Jackson and Maldonado dragged and then carried Sonnier to the police cruiser. *Id.* ¶ 42. Before being placed in the police car, Sonnier begged the officers for help and again informed them that he could not breathe. *Id.* ¶ 43. Jackson simply responded that Sonnier must get in the car. *Id.* Jackson, Peacock, and Maldonado pulled and pushed Sonnier into the car, banging his head on the floor of the vehicle. *Id.* ¶ 44.  The officers rendered no assistance despite Sonnier's repeated

---

[1] At this stage, all well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Although Defendants introduce a contradictory version of events in their Motions, the Court is not permitted to consider facts outside of the pleadings when ruling on a 12(b)(6) motion. *Id.*

pleas for help and exclamations of distress. *Id.* ¶¶ 42-43. These include Sonnier complaining of chest pain, saying "I can't fucking breathe," and prophetically crying "I swear on my son, I'm about to die." *Id*.

Sonnier's medical issues continued while he was in the police car. *Id.* ¶ 45. Still, the officers left him in the car without rendering aid. *Id.* When Jackson checked on Sonnier sometime later, Sonnier again was struggling to breath and pleading for medical assistance. *Id.* ¶ 46. Despite Sonnier's obvious medical distress, the officers did not radio for medical assistance until Sonnier had been in the police car for 20 minutes. *Id.* ¶ 47.

Shortly thereafter, the Firefighters arrived on the scene, at which time they pulled Sonnier out of the car and onto the ground. *Id.* ¶ 48. He was left alone on the ground for another ten to fifteen minutes, during which Sonnier was loudly groaning and screaming. *Id.* ¶¶ 49, 74. Eventually, the Firefighters placed him onto a gurney and took him to an ambulance. *Id.* ¶¶ 49-50. However, no paramedic was present in the ambulance, and Sonnier was without medical care on the way to the hospital. *Id.* ¶ 50. About fifteen minutes later, he went into cardiac arrest. *Id.* ¶ 51. He was pronounced dead less than half an hour later. *Id.* Throughout this incident, up to the point at which Sonnier was placed in ambulance, the Officers were observed making derisive jokes and comments at Sonnier's expense. *Id.* ¶¶ 42, 49, 50, 75.

Upon examining his body, the Harris County Medical Examiner ruled Sonnier's death a homicide. *Id.* ¶ 52. The autopsy report revealed injuries consistent with being repeatedly tased as well as blunt force injuries to Sonnier's head, torso, shoulder, wrists, hands, legs, knees, and feet. *Id.* at 15-17.

Although Sonnier was allegedly apprehended on the Officers' suspicion that he was involved in a drug transaction, no drugs were found on or near Sonnier. *Id.* ¶ 2.

3

## II.    MOTION TO DISMISS STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The movant carries the burden of proof for dismissal under Rule 12(b)(6). *Rittgers v. United States*, 131 F. Supp. 3d 644, 649 (S.D. Tex. 2015).

## III.    ANALYSIS

### a.  Body-Worn Camera Footage

First, the parties disagree over whether the Court may consider the body-worn camera (BWC) footage that Defendants have submitted with their Motions to Dismiss. In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). When deciding a 12(b)(6) motion, the Court may consider materials that are

incorporated by reference into a plaintiff's complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Samuel v. City of Houston*, No. 4:22-CV-02900, 2023 WL 6444888, at *3 (S.D. Tex. Sept. 29, 2023) (Ellison, J.) ("[F]or a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims."). This standard is generally found to be met where a claim inherently relies on the content of the relevant document.

Here, the footage is not incorporated by reference into Plaintiffs' pleadings and is not properly before the Court at this stage. Far from being central to Plaintiffs' claim, the only reference to the BWC footage in the Second Amended Complaint is Plaintiffs' assertion that the footage was initially released online but was taken down after Sonnier's death was ruled a homicide. ECF No. 23 ¶ 2; *see also id.* n.1 (alleging that the City was withholding the BWC footage). Insofar as, none of Plaintiffs' claims necessarily relies on the existence of the video or the content therein, the video is not an integral component of Plaintiffs' claims. While the video may provide relevant evidence of what did or did not occur, allowing any evidence that is merely relevant to a claim to be reviewed at this stage would impermissibly make the 12(b)(6) motion to dismiss evidentiary standard indistinguishable from the standard applied on a motion for summary judgment. Accordingly, the Court finds that it cannot review the BWC footage in deciding the present Motions to Dismiss.

### a. OFFICER CLAIMS

Plaintiffs assert claims against the individual Officers for (1) deliberate indifference to serious medical needs in violation of the Fourteenth Amendment and (2) excessive force in Violation of the Fourth Amendment. The Officers move to dismiss on the basis that Plaintiffs have not adequately alleged a constitutional violation and that the Officers are entitled to qualified immunity on the excessive force claim.

### i. Deliberate Indifference to Need for Medical Care

"The Due Process Clause of the Fourteenth Amendment guarantees that a person detained by police is entitled to medical care." *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010). "Violation of that right by deliberate indifference to serious illness or injury is actionable under § 1983." *Id.* To sustain a claim, "the plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Hill v. Carroll Cnty.*, 587 F.3d 230, 238 (5th Cir. 2009). Actions that are merely "inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). A plaintiff can show deliberate indifference by alleging that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). An official's delay in providing or calling for medical care can also constitute deliberate indifference when it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Cope v. Cogdill*, 3 F.4th 198, 209 (5th Cir. 2021) ("[P]romptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency . . . constitutes unconstitutional conduct.").

6

Plaintiffs have adequately pled a claim for deliberate indifference to Sonnier's serious medical needs against each of the Officers. The Officers were aware that Sonnier had been tackled to the ground, punched in the head several times, tased in the chest repeatedly, and had his neck and back kneeled on by multiple Officers. ECF No. 23 ¶¶ 33-37. Throughout the encounter, Sonnier told the Officers that he felt chest and arm pain, that he couldn't breathe, and that he thought he was dying. *Id.* ¶¶ 35, 42, 43, 49, 74. The Officers also observed the physical symptoms of Sonnier's medical distress as he threw up and struggled to breath. *Id.* ¶¶ 35, 40, 41. They watched as Sonnier was unable to stand, falling back to the ground when he tried. *Id.* ¶¶ 41. Instead of calling for emergency medical care, they instead dragged Sonnier's body to the police car, where it took multiple officers to push and pull him into the vehicle. *Id.* ¶ 44. Instead of providing or obtaining medical care, they then left him there for 20 minutes, despite his clear medical distress and continued pleas for help. *Id.* ¶¶ 42-43, 45, 46. He was only removed from the car after the Firefighters arrived on the scene and pulled Sonnier from the car and onto the ground. *Id.* ¶¶ 48. He then sat on the ground, "screaming and groaning in agony" for another ten to fifteen minutes. *Id.* ¶ 49, 73. Even after Sonnier was eventually placed in an ambulance and taken to the hospital, there was no paramedic in the ambulance who could render aid on the way to the hospital. *Id.* ¶ 50. Shortly thereafter, Sonnier went into cardiac arrest and died. *Id.* ¶ 51.

These facts are sufficient to support a claim of deliberate indifference. Plaintiffs have shown that all the Officers on the scene "ignored his complaints" in wanton disregard of his serious medical needs. *See Treen*, 759 F.2d at 1238. Further, they have shown the Officers delayed in obtaining medical care for Sonnier despite his obvious need, and that their delay resulted in substantial harm (i.e., his death). *See Mendoza*, 989 F.2d at 193; *Cope*, 3 F.4th at 209.

Moreover, these allegations properly set forth facts to suggest that all of the Officers had a subjective awareness of the risk of harm. The Fifth Circuit has held that an "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *see also Childers v. Bates*, No. CC-08-338, 2010 WL 1268139, at *4 (S.D. Tex. Mar. 26, 2010) ("Defendants either witnessed Plaintiff's condition or were notified of it. Given the serious nature of Plaintiff's condition . . . the Court finds the risk to Plaintiff's health and safety was obvious. Defendants' subjective knowledge of that risk may therefore be inferred."). In light of the Officers' use of force against Sonnier, Sonnier's repeated statements and pleas to Officers, and Sonnier's physical manifestations of his medical distress, the risk of harm if treatment was delayed was obvious to all present during the incident.[2]

The allegations regarding the Officers' demeanor also support Plaintiffs' claim of deliberate indifference. *See Kelson v. Clark*, 1 F.4th 411, 420 (5th Cir. 2021) (finding the fact that the officers and paramedics "harassed and laughed" at the detainee supports the conclusion that they were "subjectively aware of, and disregarded, [the detainee's] serious risk of injury"); *see also Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021) (assessing officer demeanor in making a determination on deliberate indifference claim). As was the case in *Kelson*, the fact that the Officers here allegedly made derisive comments and jokes in response to Sonnier's distress supports Plaintiffs' allegation of deliberate indifference. *See* ECF No. 23 ¶¶ 42, 49, 50, 75.

---

[2] Defendants contend that "Plaintiffs only make conclusory statements, and no individual Defendant Officer is identified as having an awareness of facts that a substantial risk of serious harm existed, and no individual Defendant Officer is identified as actually having drawn that inference." ECF No. 30 ¶ 19. As described above, Plaintiffs have pled facts to suggest that Sonnier's need for medical attention was obvious and that *all* of the Officers on the scene had an awareness of his need for medical attention. To be sure, Plaintiffs do not list out all eight Officers' names individually each time they made allegations that apply to the entire group. However, Defendants have cited no authority stating that such a formality is necessary. Because the facts suggest that Sonnier's medical needs were obvious to every individual on the scene, and that all of the Officers delayed in obtaining medical care, the Court finds no pleading deficiency merely because Plaintiffs did not individually list each Officers' name when describing their failure to act.

In sum, the Court finds that Plaintiffs have stated a claim against each of the Officers for deliberate indifference to Sonnier's need for medical care, and the Officers' Motion to Dismiss is **DENIED** with respect to this claim.[3]

### ii.    Excessive Force

#### 1.   Constitutional violation

Individuals have a Fourth Amendment right to be free from excessive force in the course of an investigatory stop or arrest. *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner,* 471 U.S. 1 (1985); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). To sustain a claim for excessive force under § 1983, a plaintiff must plead an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver*, 410 F.3d at 751).

Plaintiffs allege the Officers' use of force after Sonnier was already subdued was objectively unreasonable and thus unconstitutional. Specifically, they contend that the Officers acted with excessive force when Rivera used his taser without warning; Pulatie repeatedly punched Sonnier in the head and shoulder area; and Pulatie, Fenoglio, Keefe, Maldonado, Bravo, and Peacock kneeled on his neck and back while he lay prone, face-down on the ground. The Officers

---

[3] The Officers' Motion appears to invoke a qualified immunity defense with respect to Plaintiffs' excessive force claim only. That is, they make no argument as to whether the rights undergirding Plaintiffs' deliberate indifference claim were clearly established, and their cited authorities on qualified immunity discuss only excessive force claims. To the extent that their Motion could be read as invoking qualified immunity with respect to this claim, the Court finds that it was clearly established at the time of the incident that a serious delay in obtaining treatment for a detainee or prisoner undergoing a clear medical emergency is a constitutional violation. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("[I]t is clearly established that delaying medical care can constitute [a constitutional violation] if the prison official 'knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it,' and the delay results in substantial harm."); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (establishing that a delay in calling ambulance while a detainee was intermittently unconscious and vomiting constituted deliberate indifference); *Kelson v. Clark*, 1 F. 4th 411, 421 (5th Cir. 2021) (denying qualified immunity on the basis that prior precedent "clearly established that pretrial detainees have a Fourteenth Amendment right to medical care"). Thus, even if the issue had been raised, the Officers would not be entitled to qualified immunity at this stage.

respond that Plaintiffs have not shown that the force was clearly unreasonable. Whether force was unreasonable depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Relevant considerations are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

Taking the facts as pled, the Officers' use of force is unquestionably excessive and unreasonable. The *Graham* factors weigh heavily in favor of finding that the use of force here was unreasonable.

First, Sonnier was allegedly apprehended under suspicion of engaging in some unidentified drug crime. Certain types of drug crimes can be considered serious offenses for the purposes of the *Graham* analysis. *See Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018); *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016). However, this case is unlike *Orr*, where there was visible evidence of drugs, or *Darden*, where a magistrate judge had issued an arrest warrant after determining that there was probable cause to believe that suspects at the residence were dealing drugs. In contrast, here there was no warrant, no official finding of probable cause, and no drugs found on or around Sonnier after his death. Due to the utter dearth of facts substantiating the crime for which Sonnier was allegedly apprehended, the Court finds that the Officer's use of force was not justified by the severity of the crime. Further, even if the Court were to conclude that the first *Graham* prong cut in the Officers' favor, it is still outweighed by the remaining two factors. *See Darden*, 880 F.3d at 729 (finding the seriousness of the drug offense was outweighed by remaining *Graham* factors).

Second, Sonnier did not threaten officers or give any indication that he had a weapon. Nor was he suspected of having committed a violent crime. *See Cooper v. Brown*, 844 F.3d 517, 522-

23 (5th Cir. 2016) (finding the second *Graham* factor weighed in the plaintiff's favor given that he "was not suspected of committing a violent offense" and the officer "could see [the plaintiff's hands and knew he had no weapon"). By the time the Officers tased, punched, and knelt on Sonnier, he had already been tackled to the ground and subdued. At that point, it was apparent that he posed no threat to the Officers. Thus, this factor weighs in favor of finding the use of force was excessive.

Third, Sonnier was not fleeing or actively resisting arrest when the force was used. To be sure, Sonnier had initially fled from the officers on foot before they caught up to him a minute later and tackled him to the ground. However, "[f]or an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020). At the time of the challenged uses of force, the officers had already caught up to Sonnier and subdued him by tackling him to the ground. Sonnier was no longer fleeing or resisting when Rivera tased him, when Pulatie repeatedly struck him, or when the remaining Officers kneeled on his back and neck. Thus, this *Graham* factor likewise weighs in favor of finding that the use of force was objectively unreasonable.

In sum, based on the facts as pled, the Officers' use of force was objectively unreasonable and in violation of Sonnier's right to be free from excessive force.

## 2. Qualified Immunity

The Officers invoke a qualified immunity defense related to Sonnier's excessive force claim. The qualified immunity analysis is two-fold. The Court must assess (1) whether the facts as alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the Officers' alleged misconduct. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly

established where "prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Alternatively, qualified immunity is also unavailable if the constitutional violation was "obvious." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Having already found that Plaintiffs properly allege a constitutional violation, the only remaining question is whether Sonnier's rights were clearly established.

The rights at issue here were clearly established on June 16, 2021. The Fifth Circuit has repeatedly reaffirmed that it is a constitutional violation to tase or physically strike an individual who is not threatening officers, is not currently fleeing, and is not resisting arrest. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020) ("Officers engage in excessive force when they physically strike a suspect who is not resisting arrest."); *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) ("[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."); *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012) ("[T]he officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands. . . . [T]he officers' conduct was objectively unreasonable in light of clearly established law at the time of the incident."); *Brown v. Lynch*, 524 F. App'x 69, 81 (5th Cir. 2013) ("At the time of the incident, the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force."). The fact that Sonnier initially fled from police does not alter this analysis. *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) ("Although [the plaintiff] initially ran, . . . he was lying face down on the ground with his hands on his head when [the officer] kneed him in the hip and pushed him against a patrol car. Such a use of force on a compliant suspect is excessive and unreasonable."). Given the sheer volume of analogous cases, Rivera and Pulatie were undeniably on notice that tasing and beating a non-resisting suspect is a violation of the

12

Fourth Amendment. Accordingly, the Court concludes that Rivera and Pulatie are not entitled to qualified immunity at this stage.

Further, the remaining Officers are not entitled to qualified immunity for kneeling on Sonnier's back and neck while he lay prone after being subdued. It is "clearly established . . . that exerting significant, continued force on a person's back while that person is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Aguirre v. City of San Antonio*, 995 F.3d 395, 416 (5th Cir. 2021) (quoting *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016)). As was the case in *Aguirre*, Sonnier was already incapacitated when the Officers chose to exert significant continued force by kneeling on his back and neck. Because this right was clearly established, they are not entitled to qualified immunity.

The Officers make much of the fact that a prior complaint indicated that Sonnier "move[d]" at times while being pinned down by multiple officers. First, Plaintiffs' amended pleading renders their prior complaint of no legal effect. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Second, even if the Court could consider the prior complaint's statement that Sonnier made some unspecified movement in the course of his arrest, mere movement does not automatically constitute active resistance. Much ink has been spilled in an attempt to parse when exactly conduct rises to the level of active resistance, and whether resistance qualifies as active resistance is a fact-specific inquiry. *See generally Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017); *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013); *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020). Here, there is nothing in the pleadings to suggest that any movement of Sonnier's rose to the level of active resistance. At the motion to dismiss stage, drawing an inference that Sonnier's unspecified movement constituted active resistance would violate the requirement

that the Court view all facts in the light most favorable to Plaintiffs. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Accordingly, the Court finds that the Officers are not entitled to qualified immunity. Thus, their Motion to Dismiss is **DENIED**.

### b.  MUNICIPAL CLAIMS

Although it is somewhat ambiguous, Plaintiffs appear to bring claims against the City for failure to train, supervise and discipline, maintaining an unwritten policy or custom of allowing unconstitutional excessive force, and ratification of unconstitutional conduct.

Section 1983 does not permit *respondeat superior* liability. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). However, a municipality can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). For a municipality to face *Monell* liability, Plaintiffs must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). An "official policy" can take the form of either (1) a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority" or (2) a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

14

#### i.   Failure to Train, Supervise, and Discipline

To prevail on a failure-to-train theory, Plaintiffs must plausibly allege "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). Generally, a plaintiff must allege a "pattern of similar constitutional violations by untrained employees" to establish deliberate indifference for a failure-to-train claim. *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). However, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable." *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000). This single incident theory applies when the "risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiffs face several issues. First, they identify no specific training failure and thus fail to meet the first requirement for a failure-to-train claim. *See Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (affirming dismissal of claim for failure to train where the plaintiff "alleges no facts about what training [the City] provided or failed to provide"). Second, Plaintiffs have not shown deliberate indifference. They allege no other incidents similar to the one at hand to suggest that the City was deliberately indifferent to the need for further training. And, having identified no specific training inadequacy, it cannot be said that they have shown that the training deficiency was so severe that it meets the requirements of the single incident exception. Therefore, the Court finds that Plaintiffs have not adequately pled a claim for failure to train.

Plaintiffs' claims for failure to supervise and discipline encounter similar issues. The same requirements for failure to train apply to claims for failure to supervise or discipline. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Deville v Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009). Plaintiffs again identify no other instances of excessive force to meet the deliberate indifference standard. *See Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009); *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001); *Covington v. City of Madisonville*, 812 F. App'x 219, 227 (5th Cir. 2020). They similarly fail to plead facts supporting the application of the single incident exception nor do they identify authority applying the single incident exception in analogous circumstances. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE**.

### ii.    Unwritten Policy or Custom of Allowing Unconstitutional Excessive Force

Plaintiffs also assert that the City is liable under *Monell* because it has an unofficial custom of allowing officers to use unconstitutionally excessive force. While it is the case that a municipality can be liable for an unofficial policy or custom, "one act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). To allege an unwritten policy or custom, "[t]here must be a 'persistent and widespread practice.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001)). Because Plaintiffs plead no other similar instances of excessive force, they have failed to state a claim. This claim is therefore **DISMISSED WITHOUT PREJUDICE**.

### iii.    Ratification

Finally, Plaintiffs allege that by failing to discipline the Officers in the wake of Sonnier's death, the City may be held liable for ratifying their actions. Unfortunately, the precedent in this

circuit "has limited the theory of ratification to 'extreme factual situations.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009); *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir. 1998); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009). As a result, ratification is rarely found. This Court has previously noted the lack of a principled basis for limiting ratification theory to extreme factual circumstances. *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796 (S.D. Tex. 2013) (Ellison, J.). Nonetheless, the Court is bound by Fifth Circuit precedent and must apply it.

In determining whether a case presents "extreme factual circumstances," it is the practice of courts in this circuit to compare the present case to the facts in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985). *Granstaff* involved the execution of an unarmed civilian bystander by a cadre of police officers in an "incompetent and catastrophic performance." *Id.* at 171. Cases where it has been found that ratification claims are viable involve similarly extreme facts. For example, this Court's opinion in *Hobart* found that extreme factual circumstances were present insofar as the officers in that case killed a "civilian[ ] who died after an extraordinary number of gunshots were fired." 916 F. Supp. 2d at 796. While the facts as alleged in this case are egregious, the Court cannot conclude that this incident is as extreme as those in which a ratification theory has been allowed. Therefore, Plaintiffs' ratification claim is **DISMISSED WITH PREJUDICE**.

## IV.    CONCLUSION

The Officers' Motion to Dismiss is **DENIED**. The City's Motion to Dismiss is **GRANTED**. Plaintiffs' ratification claim is **DISMISSED WITH PREJUDICE**. Plaintiffs' other claims for municipal liability are **DISMISSED WITHOUT PREJUDICE.** The Court will allow Plaintiffs one more opportunity to amend their complaint to provide further factual allegations

supporting their claim for municipal liability.[4] If Plaintiffs wish to file an amended complaint, they must do so within fourteen (14) days of this Order.

Signed at Houston, Texas on February 12, 2024.

Keith P. Ellison
United States District Judge

---

[4] As Defendants note, Plaintiffs have already had multiple opportunities to amend their complaint. The initial amendments were to correct minor errors and occurred largely before Defendants had even been served. The most recent amendment occurred after Defendants produced the names of the Firefighters on duty during the incident and was made in order to add allegations related to the individual Firefighters. The Court finds that none of these prior amendments should preclude Plaintiffs from having the opportunity to replead their claims at this stage.