IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEGHAN SONNIER SIMMS, individually and GABRIELA LAVINE as Next Friend of Minor J.S. and on behalf of the Estate of JERMAINE K. SONNIER,<br><br>           Plaintiffs,<br><br>v.<br><br>JERRY RIVERA, FNU SCHAD, ANTHONY JACKSON, GARRETT PULATIE, PERRY FENOGLIO, WILLIAM KEEFE, ERIC MALDONADO, JOSEPH BRAVO, TAYLOR PEACOCK, FNU GARZA, CITY OF HOUSTON, TEXAS, JOHN DOE POLICE OFFICER 1, and JOHN DOE FIRE DEPARTMENT OFFICERS 1-5,<br><br>           Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:23-CV-2004 |

## DEFENDANT-OFFICERS' AMENDED MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Joseph Bravo, Perry Fenoglio, Anthony Jackson, William Keefe, Eric Maldonado, Taylor Peacock, Garrett Pulatie, and Jerry Rivera, (collectively "Defendant-Officers), file this Amended Motion for Summary Judgment under Rule 56, Fed. R. Civ. P., respectfully showing the following:

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

INDEX OF AUTHORITIES ............................................................................................... iii

NATURE AND STAGE OF PROCEEDING .................................................................... 1

STATEMENT OF ISSUES ................................................................................................ 1

SUMMARY OF THE ARGUMENT .................................................................................. 1

STANDARD OF REVIEW ................................................................................................ 2

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ..................................................................................................................... 8

I.     Plaintiffs cannot establish Excessive Force in violation of the Fourth Amendment or Overcome Qualified Immunity. ............................................................................ 8

    A.   Sonnier had committed multiple serious felonies. ............................................ 9

    B.   No actionable force used or injury caused by Defendants Keefe, Fenoglio, Jackson, Maldonado, and Peacock ................................................................. 10

    C.   Any intentional force was reasonable given Sonnier's continuous active resistance, furtive gestures, and attempts to assault officers .......................... 11

    D.   Plaintiffs cannot meet their burden to establish each Defendants' specific use of force (if any) violated the Constitution and clearly established law. ................. 12

II.    Plaintiffs cannot establish Deliberate Indifference to Serious Medical Need in violation of the Fourteenth Amendment or Overcome Qualified Immunity. ........................ 14

III.   Plaintiffs cannot establish Causation. ................................................................. 17

IV.    Plaintiff J. S. cannot establish Standing to bring claims Individually or for the Estate of Jermaine Sonnier ...................................................................................................... 17

    A.   J. S. cannot establish standing under the Wrongful Death Act as a biological or adopted child of Jermaine Sonnier .......................................................................... 18

    B.   J. S. cannot establish standing under the Survival Act as a legal heir or personal representative of the estate of Jermaine Sonnier ........................................... 20

V.     Failure to establish standing and overcome summary judgment for claims under § 1983 disposes of Wrongful Death and Survival claims. ................................................. 22

CONCLUSION AND PRAYER ....................................................................................... 23

CERTIFICATE OF SERVICE PRAYER ......................................................................... 22

# INDEX OF AUTHORITIES

**Cases**

*Adams v. Williams*, 407 U.S. 143, 146 (1972) .................................................................. 9

*Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025) ....................................................... 13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........................................................................ 3

*Barnes v. Felix*, __ U.S. __, No. 23-1239, 2025 U.S. LEXIS 1834 (2025) .................................... 9

*Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021) .......................................................... 14

*Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989) .............................................................. 11

*Carr v. City of Spring Valley Vill.*, No. H-18-2585,
    2019 U.S. Dist. LEXIS 45423 (S.D. Tex. 2019) .......................................................... 15

*City of Austin v. Membreno Lopez*, 632 S.W.3d 200 (Tex. App.—Austin 2021) ......................... 21

*City of San Antonio v. Rodriguez,*
    856 S.W.2d 552 (Tex. App.--San Antonio 1993, writ denied) .......................................... 20

*Cleveland v. Bell,* 938 F.3d 672 (5th Cir. 2019) ............................................................ 15

*Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2011) (per curiam). .......................... 2, 9

*Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752 (5th Cir. 2001) ................................... 15

*Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) ..................................................... 8

*Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 291-92 (1976) .......................................... 15

*Flores v. Cameron Cnty.*, 92 F.3d 258 (5th Cir, 1996) .................................................... 23

*Ford Motor Co. v. Cammack*, 999 S.W.2d 1 (Tex. App.—Houston [14th Dist.] 1999, no pet.)... 21

*Ford v. Anderson Cty.*, 102 F.4th 292, 307 (5th Cir. 2024) ............................................. 15

*Frazier v. Wynn,* 472 S.W.2d 750 (Tex. 1971) ............................................................... 20

*Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273 (Tex. 1989) .............................................. 18

*Goode v. Baggett*, 811 F. App'x 227 (5th Cir. 2020) ...................................................... 17

*Gorman v. Sharp*, 892 F.3d 172 (5th Cir. 2018) ............................................................ 11

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................ *passim*

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016) ...................................................................... 2, 9

*Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) ................................................ 17

*Henderson v. Harris County*, 51 F.4th 125 (5th Cir. 2022) ......................................................... 3

*Hill v. Carroll Cty., Miss.*, 587 F.3d 230 (5th Cir. 2009) .......................................................... 14

*Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013) .................................................................. 9

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996); ............................................................................ 9

*In re Dall. Grp. of Am., Inc.*, 434 S.W.3d 647 (Tex. App.—Houston [1st Dist.] 2014, no pet.)... 19

*Johnson v. Holly Farms of Texas, Inc.,* 731 S.W.2d 641 (Tex. App.--Amarillo 1987, no writ).... 20

*Jones v. Hosemann*, 812 F. App'x 235 (5th Cir. 2020) ............................................................. 17

*Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012) ..................................................................... 14

*King ex rel. Chaney v. Texas Med. Bd.*, 576 Fed. Appx. 353 (5th Cir.2014) .............................. 20

*Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148 (2018) (per curiam) ......................................... 3

*Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397 (Tex. 1993) ............................................... 23

*Marshall v. Russell*, 391 F. Supp. 3d 672 (S.D. Tex. 2018) ..................................................... 15

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) .................................................................... 3

*Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam) ..................................................................... 3

*Bell v. Hinkle*, 607 S.W.2d 936 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) ........... 21

*Pluet v. Frasier*, 355 F.3d 381 (5th Cir. 2004) .................................................................... 18, 20

*Pratt v. Harris Cty., Tex. (In re Estate of Pratt)*, 822 F.3d 174 (5th Cir. 2016) ........................... 14

*Priest v. Grazier,* 860 F. App'x 343 (5th Cir. 2021) ................................................................... 12

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................................... 3

*Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998) ..................................................................... 20

*Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022) ............................................................................11, 13

*State ex rel Latty v. Owens*, 907 S.W.2d 484 (Tex. 1995). .............................................................. 18

*State of Texas v. Gabrielle Levine*,
    CAU:2023-DCR-1362 (452nd JDC, Kimble County, Texas). ...................................... 22

*State v. Addington*, 588 S.W.2d 569 (Tex. 1979) ............................................................ 18

*Stewart v. Hardie*, 978 S.W.2d 203 (Tex. App.--Fort Worth 1998, pet. denied) .......................... 22

*Tennyson v. Villarreal*, 801 F. App'x 295, 296 (5th Cir. 2020) ...................................................... 12

*Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993)................................... 18

*Thompson v. Upshur County, Tx.*, 245 F.3d 447 (5th Cir. 2001) ................................................... 14

*Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) ................................................................... 3

*Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) ...................................................... 3

*Turk v. Mangum*, Civil Action No. H-15-1003,
    2017 U.S. Dist. LEXIS 227820 (S.D. Tex. 2017)...................................................................... 18

*United States v. Sanders*, 994 F.2d 200, 210 (5th Cir. 1993) .......................................................... 9

*Wagner v. Bay City*, 227 F.3d 316 (5th Cir. 2000) ................................................................... 14, 15

*Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018)................................................................11

*White v. Pauly*, 137 S. Ct. 548 (2017)....................................................................................... 3

**Statutes, Codes, and Constitution**

42 U.S.C. § 1983................................................................................................................*passim*

FED. R. CIV. P. 56 ...................................................................................................................2-3

TEX. CIV. PRAC. & REM. CODE § 71.010 .................................................................................. 23

TEX. CIV. PRAC. & REM. CODE §§ 71.001-.004............................................................................22-23

TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 ............................................................................ 20

TEX. EST. CODE § 22.015 ......................................................................................................... 20

TEX. EST. CODE § 304.003 ....................................................................................... 22

TEX. EST. CODE §201.001 ........................................................................................ 21

U. S. Const. Amend. IV ..................................................................................... *passim*

U. S. Const. Amend. XIV ................................................................................... 14-17

## NATURE AND STAGE OF PROCEEDING

Plaintiffs Meghan Simms, individually, and Gabriella Lavine as next friend of minor J. S., individually and on behalf of the estate of Jermaine Sonnier, sue Defendant-Officers for alleged excessive force and deliberate indifference to serious medical need in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, (Dkt. 8), stemming from Defendant-Officers' June 2021 encounter with Jermaine Sonnier who evaded and actively resisted arrest after selling illegal drugs to an undercover police officer, and later died from having ingested a lethal amount of methamphetamines. The Defendant-Officers move for summary judgment.

## STATEMENT OF ISSUES

1. Whether Plaintiffs can meet their evidentiary burden to show a clearly established violation of the Fourth Amendment's prohibition on excessive force by each Defendant and overcome their qualified immunity.

2. Whether Plaintiffs can establish a Fourteenth Amendment claim for deliberate indifference to serious need and cite to authority clearly establishing a constitutional violation under the same circumstances and overcome qualified immunity.

3. Whether Defendants are entitled to summary judgment because Plaintiffs cannot establish causation.

4. Whether Plaintiff J. S. has standing to bring claims under the Texas Wrongful Death and Survival statutes.

## SUMMARY OF THE ARGUMENT

On June 16, 2021, the Defendants, uniformed police officers operating marked police patrol vehicles, initiated a traffic stop to detain Jermaine Sonnier, who had sold illegal narcotics to an undercover police officer. Sonnier evaded on foot and then actively resisted arrest, assaulted officers, disobeyed numerous lawful commands while reaching for his waistband where a deadly

weapon was ultimately found.  The Defendant-Officers used either no force or minimal force that was necessary to restrain and arrest Sonnier and caused only a superficial injury from a taser dart near Sonnier's chest.   No force was used after Sonnier's hands were restrained despite his continued violent resistance.   Injuries, even serious injuries caused by reasonable force do not violate the constitution.

Defendant-Officers' constitutional duty was satisfied by promptly calling for emergency medical services for Sonnier.  Plaintiffs cannot demonstrate a serious medical need that the Defendants were aware of, a deliberate denial of care to alleviate that need, or a resulting substantial harm that the Defendants intended.  Sonnier was stable, his breathing and vitals normal, until he reached the hospital.  Sonnier died after going into cardiac arrest from having ingested a lethal amount of methamphetamine.

Sonnier died from having taken dangerous drugs and not any unconstitutional action or inaction of the Defendants.  Summary judgment is also proper because Plaintiffs cannot prove causation.

Plaintiffs cannot cite to precedent putting every reasonable officer on notice of a constitutional violation under the same or closely similar circumstances to overcome qualified immunity.

Plaintiff J. S. cannot meet her burden to prove standing under the Texas Wrongful Death and Survival statutes because she is not the legal or biological child of Jermaine Sonnier; she is not an heir of Sonnier's estate and cannot prove she is the sole heir or that an administration of the estate is not necessary.

## <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  *Griggs v. Brewer*, 841

F.3d 308, 311-12 (5th Cir. 2016).  The court must view all the "facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2011) (per curiam).  Except when, as here, there is video and audio recording of the event, the Court should "view[ ] the facts in the light depicted by the videotape." *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

An assertion of qualified immunity alters this familiar standard, however.  The burden shifts to the plaintiff to show that: (1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct.  *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017).  To be clearly established, a right must be "sufficiently clear that **every** reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (per curiam).

"The hurdle is even higher when the plaintiff alleges a Fourth Amendment violation." *Henderson v. Harris County*, 51 F.4th 125, 135 (5th Cir. 2022).  In excessive-force cases, "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (quoting *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1153 (2018) (per curiam)).

## STATEMENT OF FACTS

On June 16, 2021, the Defendants, police officers assigned to the Houston Police Department (HPD) Gang Division, Crime Reduction Unit, were conducting a joint "buy bust" operation with HPS Narcotics Officers.  Exhibit 40 at 000583-588; Exhibit 29; Exhibit 8 at ¶¶9-10; Exhibit 1 at 001121-23; Exhibit 2 at 001104-1106; Exhibit 3 at 001132-34; Exhibit 4 at 001125-1127; Exhibit 5 at 001112-1114; Exhibit 6 at 001107-1100; Exhibit 7 at 001116-1119; Exhibit 8 at 001099-1102.  The Defendant-Officers were clearly recognizable as police officers wearing

3

distinctive police uniforms and operating marked Houston Police Department patrol vehicles. Exhibit 40 at 000602-603; Exhibit 8 at ¶12; Exhibit 7 at ¶¶11; Exhibit 5 at ¶11; Exhibit 6 at ¶10; Exhibits 10-21.[1]

During surveillance, Defendant Sergeant Pulatie was advised that a pistol had been found in the red Chevrolet Camaro the drug dealer (Sonnier) was operating out of during a recent stop by HPD officers.  Exhibit 8 at ¶14-16.

The Defendant-Officers received a positive "bust" signal to make an arrest after an undercover officer purchased crack cocaine from Jermaine Sonnier, described as a black male with red-tipped dreadlocks, wearing no shirt, and driving a red Chevrolet Camaro.  Exhibit 28 at 000947; Exhibit 8 at ¶¶14-17; Exhibit 11 at 21:30-24:00; Exhibit 2 at ¶34; Exhibits 1-A, 2-A, 3-A, 4-A, 5-A, 6-A, 7-A, 8-A.  Defendant Sergeant Pulatie was advised that a pistol had been found in the same red Chevrolet Camaro during a recent stop by HPD officers.  Exhibit 8 at ¶14-16.

 Officers Bravo and Rivera, driving a marked HPD patrol car, turned into the shopping center as the red Chevrolet Camaro driven by Sonnier, who matched the suspect's description, was about to exit.   Exhibit 5 at ¶12-14; Exhibit 6 at ¶¶12-16; Exhibit 18 at 01:25-02:30; Exhibit 15 at 0:50- 2:50; Exhibit 14 at 1:45-2:30.  The Officers activated their emergency lights and angled their patrol vehicle to stop the Camaro.  *Ibid.*  Exhibit 18 at 01:25-02:00.  Sonnier immediately pushed his driver's side door wide open and started to get out as Officer Rivera approached.  Exhibit 18 at 01:25-02:00; Exhibit 15 at 00:50-1:00; Exhibit 15 at 00:58.

Officer Rivera stopped the door with his hand and moved in to block Sonnier from fleeing. Exhibit 18 at 02:00-02:30; Exhibit 14 at 1:45-2:30; Exhibit 15 at 0:50-1:08.  Sonnier pushed past

---

[1] A detailed timeline of the contents of all body-worn and vehicle cameras with minute markers prepared by the HPD Internal Affairs Division investigators is attached as Exhibit 25.  Exhibits 9 through 21 contain the videos.

Officer Rivera and took off running. Exhibit 18 at 02:02-02:06; Exhibit 15 at 00:58-1:30. Officers Rivera and Bravo chased after him on foot. Exhibit 14 at 1:45-2:30; Exhibit 15 at 00:58-1:30; Exhibit 5 at ¶¶12-14; Exhibit 6 at ¶¶12-16.

Officers Maldonado and Peacock drove up from the opposite direction and saw Sonnier running with a uniformed police officer chasing after him. Exhibit 4 at ¶10; Exhibit 13 at 2:00-2:25. Officer Peacock got out and gave chase on foot while Officer Maldonado turned his vehicle to try to cut Sonnier off. Exhibit 13 at 2:00-2:25; Exhibit 1 at ¶9; Exhibit 4 at ¶¶ 10-14; Exhibit 10 at 1:00-2:25. A narcotics officer in an unmarked pickup truck pulled onto the curb in front of Sonnier, causing Sonnier to slip on the wet sidewalk and fall to the ground. Exhibit 13 at 02:15-2:25; Exhibit 14 at 17:11; Exhibit 4 at ¶¶ 10-14.

Sonnier turned towards Officer Peacock and started getting up off the ground. Exhibit 13 at 02:15-0:25. Officer Peacock pushed Sonnier to the ground and told him to stay on the ground. *Id.* at 02:20-02:35. Sonnier tried to get up again. Officer Peacock pushed him down again. *Id.* Exhibit 4 at ¶¶11-13

Officer Rivera saw Officer Peacock struggling to keep Sonnier down, shouted "*Watch out!*" then deployed his taser; one of the taser darts struck Officer Peacock in the arm, the other dart struck Sonnier near the chest. Exhibit 13 at 2:30-02:35; Exhibit 15 at 1:12-1:34; Exhibit 4 at ¶14-16; Exhibit 6 at ¶¶17-21. Officer Peacock cursed, grabbed his forearm and stepped back momentarily. The taser was ineffective in incapacitating Sonnier.[2] *Ibid.* Exhibit 14 at 02:30-02:40; Exhibit 13 at 2:37-3:12. Sonnier kept his arms hidden underneath his body and disregarded repeated commands to "*roll over, roll over now*" and put his "*hands behind your back*!", then "*put your head down.*" Exhibit 14 at 02:20-02:40; Exhibit 13 at 02:30-02:40.

---

[2] A taser dart punctures the skin and causes pain itself, but to effectively function, both darts must make contact with the person. Exhibit 4 at ¶14-16. Exhibit 6 at ¶¶17-21

Sergeant Pulatie arrived and saw the Officers tiring while struggling with Sonnier.  He assisted while actively making sure no one hurt Sonnier.  Exhibit 17 at 2:29-2:23-2:30.  Sonnier refused orders to give them his hands and roll over, tried to get up, roll away, and swing at officers. Sergeant Pulatie told the Officers to roll Sonnier over.  Exhibit 17 at 2:29-3:04; Exhibit 14 at 2:30-2:50; Exhibit 1 at ¶11; Exhibit 13 at 02:40-03:15; Exhibit 15 at 02:30-02:40.

Officers Maldonado and Rivera finally managed to roll Sonnier over.  *Ibid.*  Exhibit 13 at 03:09-03:20.  Officer Rivera held onto Sonnier' left arm while pinned to the ground underneath Sonnier, who was still actively trying to get up.  *Ibid.*  Using his own arm as leverage, Officer Rivera held Sonnier's left arm while Officer Peacock managed to slip a handcuff on it.  *Ibid.* Exhibit 13 at 03:10-03:47; Exhibit 5 at ¶¶15-17; Exhibit 14 at 02:00-03:00.  Officer Peacock stepped away, while Officer Rivera remained pinned on the ground underneath Sonnier, holding onto Sonnier's left arm that had a loose handcuff attached to it.

Sonnier kept his right hand tucked away and kept reaching for his waistband area.  Officers Maldonado and Bravo tried unsuccessfully to get Sonnier turned over and his right hand in handcuffs.  Exhibit 13 at 03:40-04:30; Exhibit 14 at 02:45-03:00; Exhibit 17 at 2:43-3:04. Exhibit 1 at ¶¶9-12; Exhibit 5 at ¶17; Exhibit 25 [Dkt. #73-37] at Pages 62:19 to 63:6.

Sergeant Pulatie ordered Sonnier, "*Put your hands behind your back!  Do it or I'm going to hit you!  Do it!*"  Exhibit 14 at 02:45-03:10; Exhibit 17 at 02:08-03:04.  When Sonnier did not comply,  Sergeant Pulatie administered pain compliance strikes with his fist to Sonnier' s upper back while giving verbal commands and took a brief pause.  *Ibid.*  Exhibit 13 at 3:48-04:30. Sergeant Pulatie gave a second round of compliance strikes also targeted at the upper back, though one or two strikes might have struck the back of Sonnier's head.  *Ibid.*  Exhibit 14 at 03:15-03:40; Exhibit 17 at 3:04-3:24.  The second round of strikes was effective, and they were able to get

Sonnier's right arm out from underneath him, but Sonnier continued to resist by making fists and twisting his hand.  It took multiple officers to hold Sonnier and place a second set of handcuffs onto his right wrist, pull his arms together to fasten the two sets of handcuffs together.  Sonnier continued to move and try to get up. Exhibit 14 at 03:30-04:50; Exhibit 13 at 3:30-04:30; Exhibit 7 at ¶¶15-17; Exhibit 17 at 3:04-3:24.

Sonnier refused to get up or walk to the police car and actively resisted by going limp and dropping his body weight.  *Ibid.*  Exhibit 14 at 04:40-05:00.   Sonnier lunged at and tried to strike Officer Rivera with his shoulder.   Exhibit 14 at 04:40-04:56.  He then jumped away and tried to flee but Officer Rivera kept hold of him and Sonnier was pushed against the fence.  *Id.* at 04:50-05:00.  Sonnier repeated that he "*didn't do any fucking thing*" but didn't stop fighting.   *Id.* at 05:00-05:25.

Sonnier had to be carried by the arms and legs and actively resisted being placed in the car. Exhibit 17 at 04:00-6:46; Exhibit 14 at 05:25- 06:30; Exhibit 21 at 6:00-7:30.  Sonnier said he could not breathe, was allowed to catch his breath, then immediately started fighting again.  Exhibit 14 at 7:00-7:30; Exhibit 21 at 6:20-9:10; Exhibit 19; Exhibit 20.

Sonnier was placed on his back across the backseat of a police car.  He lifted his legs over his head and kicked at the two Officers behind him, then kicked Officer Peacock hard in the chest and head.  Exhibit 21 at 6:20-8:00; Exhibit 14 at 06:25-07:30.

Defendant-Officers requested emergency medical services for Sonnier as soon as he was secured in the car and the doors closed.  Exhibit 13 at 8:15; Exhibit 16 at 08:58; Exhibit 14 at 7:00-7:30; Exhibit 17 at 5:40-6:46; Exhibit 26 at 1072, 1078; Exhibit 25 at 000195 & 214.   Officer Jackson was assigned to watch Sonnier and kept continuous eyes of him.  Officers Jackson and Fenoglio kept in constant communication with Sonnier and could see that he was breathing

7

Exhibit 17 at 6:53-7:05; *id.* at 7:48; *id.* at 12:22-27:00; Exhibit 35 [Dkt. #73-37] at Pages 35:13 to 35:22; 38:8 to 38:15; 67:8 to 67:16; 68:10 to 69:7; Exhibit 7 at ¶¶32-40; Exhibit 2 at ¶25-28.

HFD Ambulance #037 and EMS Unit #028 were dispatched at 19:16:49 and arrived within ten minutes of Sonnier being secured in the police car.    Exhibit 17 at 19:38; Exhibit 15 at 21:10-21:40; Exhibit 26 at 001067-1070; 1072-1079; 1664-1666.  Sonnier's airways and lungs were clear and his breathing was normal.  *Id.*

When asked, Sonnier told EMS he had taken "X" or "ecstasy pills" 30 minutes earlier.  Exhibit 15 at 21:10-23:00; Exhibit 10 at 23:00-24:14; Exhibit 7 at ¶¶41-43; 55; Exhibit 3 at ¶¶22-27; Exhibit 4 at ¶31; Exhibit 5 at ¶31; Exhibit 6 at ¶34.

Sonnier was placed on a stretcher and transported to the closest hospital by ambulance.  Exhibit 26 at 001073 ("Reason: Closest Facility").  Sonnier was reassessed twice during transport, at 19:43:51 and 19:49:57.  His vitals were normal; he was conscious and responsive each time.  Exhibit 26 at 001072, 1078.  He was still combative and EMS restrained him using gauze to the gurney.  *Id*. at 001072, 001078; Exhibit 7 at ¶44-45.

Inside the hospital, Sonnier became unresponsive but was breathing and had a pulse.  Exhibit 26 at 001072; Exhibit 16 at 45:14-46:51.  Paramedics immediately started CPR as hospital staff took over. Exhibit 16 at 46:51-47:22.  Sonnier went into cardiac arrest and was pronounced dead twenty-three minutes later at 20:18:00.  Exhibit 16 at 1:11:00-12:00; Exhibit 24.  Sonnier died of acute methamphetamine toxicity from the drugs he ingested.  The struggle and minor use of force neither caused nor contributed to his death.    *See* Exhibit 22 (Expert Report of Dr. K. Totz).

## ARGUMENT

I.    **Plaintiffs cannot establish Excessive Force in violation of the Fourth Amendment or Overcome Qualified Immunity.**

8

Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment. *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)(citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In the Fifth Circuit, a plaintiff must show: (1) a physical injury that is more than *de minimis*; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Id.*; *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

"The objective reasonableness of the force depends on the facts and circumstances of the particular case—the need for force determines how much force is constitutionally permissible." *Hogan v. Cunningham*, 722 F.3d 725, 734 n.25 (5th Cir. 2013) (citing *Ikerd*, 101 F.3d. at 434–35)). The court must evaluate the use of force "from the perspective of a reasonable officer on the scene," and not "with the 20/20 vision of hindsight," *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). This demands careful attention to the facts and circumstances relating to the incident, as then known to the officer. *Barnes v. Felix*, __ U.S. __, No. 23-1239, 2025 U.S. LEXIS 1834 *8-9 (2025). For example, the "severity of the crime" prompting the stop can carry weight in the analysis. *Id.* (citations omitted). So too can actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter. And the stopped person's conduct is always relevant because it indicates the nature and level of the threat he poses, either to the officer or to others. *Id.* (multiple citations omitted). An officer "should not be denied the opportunity to protect himself from attack by a hostile suspect." *United States v. Sanders*, 994 F.2d 200, 210 (5th Cir. 1993) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

**A.    Sonnier had committed multiple serious felonies.**

Defendant-Officers knew that Sonnier had committed felony delivery of a controlled substance, evading arrest or detention on foot, resisting arrest, and assault on a police officer.

9

Exhibit 28 at 000947 (the District Attorney accepted delivery of a controlled substance and evading arrest on-foot charges against Sonnier). The seriousness of Sonier's crimes are beyond dispute. *See Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016) ("Under *Graham*, driving while under the influence is a serious crime; the intoxicated Griggs was capable of and evinced erratic behavior; and Griggs had been and continued to demonstrate active resistance during the course of the arrest.").

**B.    No actionable force used or injury caused by Defendants Keefe, Fenoglio, Jackson, Maldonado, and Peacock**

Defendants Fenoglio and Jackson barely touched Sonnier other than to help carry and place him in the police car. Exhibit 25 at 000221-227 (Jackson); Exhibit 7 at 001116-1119; *id.* at 000195-223*;* Exhibit 25 at 232-237 (Fenoglio); Exhibit 2 at ¶16, 3, 7; *id.* at 001104-1106; *id.* at 000318-341. They did not strike, kick, punch, or tase Sonnier.

Defendant Keefe arrived at the end of the struggle to restrain Sonnier and briefly attempted to gain control of Sonnier's arm as he continued to actively resist by throwing his arms around, trying to get up off the ground and push officers away. Officer Keefe left to assist with the detention of the female passenger in the red Camaro. Exhibit 25 at 000219-221 (Keefe); Exhibit 3 at ¶¶10-14; *id.* at 001132-34; *id.* at 000292-310.

The only force used by Defendants Maldonado and Peacock was pulling, pushing, grabbing, and rolling Sonnier in order to get his hands and apply handcuffs while Sonnier evaded them, actively resisted and fought them, pushed, swung, kicked at them, and kicked Officer Peacock at least twice in the chest and head. Exhibit 25 at 000212-219 (Peacock); Exhibit 4 at ¶¶ 10-23; *id.* at 001125-1127; *id.* at 000349-378  Exhibit 25 at 227-232 (Maldonado); Exhibits 4, 1, 10. 13. They did not strike, kick, punch, or tase Sonnier.

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest

10

or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry*, 392 at 22-27). This minimal physical coercion was reasonable to affect Sonnier's arrest given his continuous active resistance while reaching for what Officers reasonably believed could have been a weapon in an area brass knuckles were later found. *Id. See, e.g., Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022) (district court erred in denying qualified immunity because it was reasonable to believe that, in light of plaintiff's interjections, her comments toward them, her resistance, and her indignation on being told she would be arrested, some degree of force would be necessary to subdue her.).

Plaintiffs cannot show any injury caused directly and only from the minimal physical coercion by these Defendant-Officers rather than Sonnier's own actions and behavior. *Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (plaintiff did not show that her injury was caused by one officer who [immobilized her instead of the other officer who body-slammed her). Minor scrapes and bruises do not give rise to an excessive force claim. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018)).

> **C.    Any intentional force was reasonable given Sonnier's continuous active resistance, furtive gestures, and attempts to assault officers.**

Officer Rivera deployed his taser on Sonnier who had just sold illegal drugs to an undercover officer and evaded Officer Rivera on foot while Sonnier was actively resisting Officer Peacock, refusing lawful commands to stay down on the ground, trying to stand up and flee again. The taser had minimal effect because only one dart made contact with Sonnier. Exhibit 25 at 000207-219; Exhibit 6 at ¶¶10-27; *id.* at 001107-1110; *id.* at 000157-186. Officer Rivera also helped handcuff Sonnier's left wrist and kept ahold of it while pinned to the ground underneath Sonnier. Officer Rivera did not punch, kick, strike, or otherwise tase Jermaine Sonnier.

Sergeant Pulatie reasonably applied pain compliance strikes to Sonnier's back and shoulder area, and Officer Bravo reasonably applied pain compliance strikes to Sonnier's lower back or waist area, while Sonnier actively resisted and refused numerous clear and lawful commands to quit fighting, roll over, give them his hands and put them behind his back.  Exhibit 25 at 000190-201; 201-207; Exhibit 8 at ¶¶25-62; *id.* at 001099-1102; *id.* at 000387-439; Exhibit 5 at ¶¶11-23; *id.* at 001112-114; *id.* at 000258-285.

At the time, Sergeant Pulatie believed that Sonnier might be armed with a firearm because surveillance officers told him they recently recovered a pistol in the same red vehicle.  Exhibit 8 at ¶¶14-16; 18, 27-28, 35.  Sergeant Pulatie, Officers Bravo, Peacock, Rivera, and Maldonado, feared that Sonnier was reaching for a weapon, because Sonnier kept his hands underneath him or hidden and continually reached for his waistband area, where brass knuckles were ultimately found.  Exhibit 2 at ¶¶16, 24; Exhibit 5 at ¶¶16, 19, Exhibit 8 at ¶¶14-16, 18, 27-28, 35.  The area of Houston was known to the Defendant-Officers for gang activity, and they knew from training and experience that drug-dealers often carry firearms. Exhibit 1 at 000227-250; Exhibit 2 at 000318-341; Exhibit 4 at 000349-378; Exhibit 5 at 000258-285; Exhibit 6 at 000253-255l; Exhibit 8 at 000387-439.

No force was used by any Defendant-Officer after Sonnier's hands were restrained even though he continued to resist and fight them, kicking and injuring officers.  *Ibid.*

**D.      Plaintiffs cannot meet their burden to establish each Defendants' specific use of force (if any) violated clearly established law.**

The Fifth Circuit has "repeatedly held that 'noncompliance or continued physical resistance' justifies the use of force." *Solis*, 31 F.4th at 979; *Priest v. Grazier,* 860 F. App'x 343, 344–45 (5th Cir. 2021) (granting qualified immunity to officers who, after spending two minutes trying to get the plaintiff to lower his window or open his door, broke the window, took him to the

pavement, held his face down in broken glass while cuffing him, and struck him three times to get him to stop pulling his hand away); *Tennyson v. Villarreal*, 801 F. App'x 295, 296 (5th Cir. 2020) (officers who "had to take [plaintiff] to the ground to handcuff him because of his noncompliance").

"The third *Graham* factor, in sum, concerns the degree of resistance to the officer's **objective**." *Anderson v. Estrada*, 140 F.4th 634, 645-47 (5th Cir. 2025) (emphasis original). The Fifth Circuit summarized this factor in detail:

> An arrestee who is "restrained and subdued" is not actively resisting. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). But those characteristics of passive resistance are conjunctive: that a suspect is handcuffed does not end the inquiry. *See Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's use of force is excessive"); *Bailey v. Ramos*, 125 F.4th 667, 684 (5th Cir. 2025) ("use of force against a handcuffed suspect is not excessive if the suspect is resisting by ignoring lawful commands").
>
> … Repeated attempts to withdraw from an officer or declining to follow an officer's orders constitute active resistance. *Betts*, 22 F.4th at 584. "Pull[ing], twist[ing], turn[ing], or walk[ing]" toward or away from an officer amount to active resistance when those actions frustrate the officer's objective or disobey an officer's order. ...
>
> Accordingly, an arrestee actively resists by ignoring an officer's order to **stop** doing something or to refrain from doing something. ...
>
> Under these precepts, the video shows that Anderson actively resisted the officers in this case. Anderson kicked at them when attempting to hook his feet under the SUV door, thrashed as the officers struggled to secure him inside the SUV, used his weight to make the officers' task more difficult, and failed to comply with countless orders by the officers to stop resisting and to sit in the vehicle with his legs inside. Anderson's actions, which frustrated for a lengthy period the officers' attempts to secure him inside the SUV, constituted active resistance.

*Anderson*, 140 F.4th at 645-47. Like the suspect in *Anderson*, Plaintiff actively resisted the officers' every objective.

The Fifth Circuit has held Officers entitled to qualified immunity in circumstances that

13

involved much more physical force by officers and far less active resistance than in this case. *Pratt v. Harris Cty., Tex. (In re Estate of Pratt)*, 822 F.3d 174, 184 (5th Cir. 2016) (no excessive force against arrestee, "whose commitment to stop resisting was on again, off again" and who was tased repeatedly, died after the officers hog-tied him for a brief period and the officers did not know he was under the influence of drugs); *Khan v. Normand*, 683 F.3d 192, 195-96 (5th Cir. 2012) (no violation because the arrestee "was not left face down in the four-point restraint for an extended period of time," "remained under constant supervision," and there was no indication that he was in a drug-induced psychosis); *Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 232-33, 237 (5th Cir. 2009) (no violation where an obese arrestee died after being hog-tied and placed alone and face down in the back seat of a patrol car for a 29 mile ride to the jail). The Defendant-Officers are entitled to qualified immunity.

## II. Plaintiffs cannot establish Deliberate Indifference to Serious Medical Need in violation of the Fourteenth Amendment or Overcome Qualified Immunity.

A pretrial detainee's constitutional right to medical care arises from the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). To establish liability, Plaintiffs must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Id.*

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 458-59 (5th Cir. 2001). If a detainee relies on delay in obtaining medical treatment as the basis of a due process claim of deliberative indifference, then the detainee must show that the delay results in substantial harm; pain suffered

14

during that delay, though, can constitute substantial harm. *Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021).

Deliberate indifference is "an extremely high standard to meet,"[3] and the plaintiff "needs to establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner*, 227 F.3d at 324-25. They must not only show that each defendants' actions were objectively unreasonable, but also that they were subjectively aware of and intended the consequence of those actions. *Id. See also Carr v. City of Spring Valley Vill.*, No. H-18-2585, 2019 U.S. Dist. LEXIS 45423, at *21-22 (S.D. Tex. 2019) (plaintiffs failed to show the individual defendants subjectively knew that Thomas urgently needed medical care, but purposely chose to delay access by failing to tell medical personnel that Thomas had been shot with a taser or that he could not breathe) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 291-92 (1976); *Cleveland v. Bell,* 938 F.3d 672, 676 (5th Cir. 2019)).

Summoning an ambulance or permitting Emergency Medical Services (EMS) access to injured individuals as the Defendant-Officers promptly did in this case satisfies the constitutional duty to provide medical care and easily disposes of this claim. *Marshall v. Russell*, 391 F. Supp. 3d 672, 690 (S.D. Tex. 2018) (citations omitted). At least two Defendant-Officers promptly requested HFD emergency medical services to the scene for Sonnier. Exhibit 25 at 000195, 214; Exhibit 17. Officer Peacock requested HFD for Sonnier's complaints of breathing difficulty before Sonnier was even secured in the police car. At the time, Officer Peacock had been tased, was bleeding and out of breath. Exhibit 13 at 8:15. *See also* Exhibit 16 at 08:58 (an officer requested HFD for Sonnier who was complaining of chest pain); Exhibit 17 at 18:20; Exhibit 25 at 000195.

Plaintiffs cannot show that any Defendant was subjectively aware of a substantial risk of

---

[3] *Ford v. Anderson Cty.*, 102 F.4th 292, 307 (5th Cir. 2024) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

serious harm to Sonnier, or that signs of such a risk existed.   Before Sonnier told EMS, the Defendant-Officers neither knew nor had reason to believe that Sonnier had ingested dangerous narcotics.  Officers checked Sonnier for injuries, noting only a scratch on his back and superficial puncture from the taser dart near his chest.   Exhibit 25 at 000195; Exhibit 17 at 18:20.

When Sonnier was secured in the police car,   Officer Jackson was assigned to and continuously watched him.   Officers Jackson and Fenoglio made sure Sonnier was not face down, kept him talking and watched him breathing until HFD arrived less than ten minutes later.   Exhibit 16 at 09:16-19:43; Exhibit 11 at 08:00-18:00; Exhibit 7 at ¶¶39-40; Exhibit 2 at ¶¶11-14; Exhibits 19, 20, 21 at 7:00-18:00.

Sonnier had claimed he could not breathe throughout the encounter while the Officers *could see* that he was breathing, talking, kicking, and trying to break free.  Exhibit 25 at 000223-224; Exhibit 16 at 09:16-19:00; Exhibit 7 at ¶¶39-40; Exhibit 2 at ¶¶11-14; Exhibit 11 at 09:00-19:00; Exhibits 19, 20, 21 at 7:00-18:00.   Sonnier was not showing symptoms of acute methamphetamine toxicity or medical crisis that a reasonable officer should have recognized.  He appeared exactly as expected for having evaded on foot and vigorously resisted multiple officers. Exhibit 16 at 09:16-19:43; Exhibit 11 at 08:00-18:00; Exhibit 7 at ¶¶39-40; Exhibit 2 at ¶¶11-14; Exhibits 19, 20, 21 at 7:00-18:00.

There was no serious medical need to treat; Sonnier was stable, his vitals were assessed and normal while at the scene and in the ambulance.  Sonnier's condition changed after arriving inside the hospital.  Exhibit 15 at 21:10-23:00; Exhibit 10 at 23:00-24:14; Exhibit 7 at ¶¶41-43; Exhibit 26 at 1072, 1078.

Even assuming *arguendo* there was a serious medical need the Officers were aware of; there was nothing they could have done to alleviate it based on their training and experience.

16

Exhibit 2 at ¶12; Exhibit 1 at ¶27; Exhibit 3 at ¶27; Exhibit 4 at ¶31; Exhibit 5 at ¶35; Exhibit 6 at ¶34; Exhibit 7 at ¶54; Exhibit 8 at ¶¶42-43.

Finally, Plaintiffs cannot show a substantial harm resulting from any alleged denial of medical care.   Sonnier ingested deadly amounts of a dangerous drug that were the sole cause of his injury and death from cardiac arrest due to acute methamphetamine toxicity.  *See* Exhibit 22; Exhibit 23 at 000539-538.

**III.    Plaintiffs Cannot Establish Causation.**

Plaintiffs cannot establish the causation element of a 42 U.S.C. § 1983 claim, which requires a plaintiff to prove that the injury resulted "directly and only from" the use of excessive force. *See Gutierrez v. City of San Antonio*, 139 F.3d 441,444 (5th Cir. 1998); *Goode v. Baggett*, 811 F. App'x 227, 231 (5th Cir. 2020); *see also Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020).

Sonnier's death was caused by acute methamphetamine toxicity from the illegal narcotics he ingested.  Exhibit 22 (Expert report of Dr. Totz); Exhibit 23 at 000539-538 (Toxicology Report). The taser dart caused only a superficial puncture wound that neither caused nor contributed to cardiac arrest and Sonnier's death.    Exhibit 22.   Any effect from the taser charge was temporary. *Id.*  Sonnier had a minor scratch on his back but no other injuries.   *Id.*   Sonnier was stable during and after the foot chase and physical struggle.  He was stable with normal vitals at the scene, in the ambulance, up until the time he arrived at the hospital and went into cardiac arrest.   *Id.*   There is neither a medical nor evidentiary basis to assign as contributing causes the physical exertion from the chase or struggle, which irrespectively, were caused by Sonnier's decisions to flee and fight, not any unconstitutional act of the Defendant-Officers.  *Id.*

**IV.    Plaintiff J. S. Cannot Establish Standing to Bring Claims Individually or for the Estate of Jermaine Sonnier.**

17

To have standing in a wrongful death or survival action claim brought under 42 U.S.C. § 1983, a party must have standing under the state's wrongful death and survival statute. *Turk v. Mangum*, Civil Action No. H-15-1003, 2017 U.S. Dist. LEXIS 227820, at *9 (S.D. Tex. 2017) (citing *Pluet v. Frasier*, 355 F.3d 381, 384 (5th Cir. 2004)).   Plaintiffs bear the burden to plead and prove standing by clear and convincing evidence. *Id.* at *9 (citing *Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 276 (Tex. 1989)); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).   Standing may not be established by merely pleading "conditions precedent have been performed or occurred" under Rule 54.  *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993); *State ex rel Latty v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995).

### A.   J. S. cannot establish standing under the Wrongful Death Act as a biological or adopted child of Jermaine Sonnier.

Under the Texas Wrongful Death Act, only the surviving spouse, children, and parents of the deceased, may have standing may sue for redress for the wrongful death of another.  TEX. CIV. PRAC. & REM. CODE § 71.004(b)-(c) (2014). *See In re Dall. Grp. of Am., Inc.*, 434 S.W.3d 647, 648 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  "Children," in the Wrongful Death Act, means filial descendants, and includes a decedent's biological and adopted children.  *Ibid.*

The father-child relationship is established by (1) an unrebutted presumption of the man's paternity, (2) an acknowledgement of paternity, (3) an adjudication of paternity, (4) adoption of the child, or (5) the man's consent to assisted reproduction by his wife, which results in the child's birth.  TEX. FAM. CODE § 160.201(b).  A man is presumed to be the father of a child when he is married to the child's mother and the child is born during the marriage or, under certain circumstances, after the marriage has ended.   TEX. FAM. CODE § 160.204(a).  A man may voluntarily acknowledge his paternity of a child in a writing that complies with the Texas Family Code.  TEX. FAM. CODE § 160.302(a).  With certain exceptions, a valid acknowledgment of

18

paternity filed with the bureau of vital statistics is the equivalent of an adjudication of the paternity of a child. TEX. FAM. CODE §§ 160.305(a), 160.302(a)(5), 160.201(b)(2), (b)(3). *In re Dall. Grp. of Am., Inc.*, 434 S.W.3d at 648. Paternity can <u>never</u> be established by genetic testing after the father's death without a legal presumption, acknowledgment or adjudication of paternity during the father's lifetime. *Id.* at 652, citing TEX. FAM. CODE §§ 160.502(a), 160.621(c)(1), 161.005(c)—(o), 161.005 & 160.308. *See also Turk*, LEXIS 227820, at *9.

Plaintiff J. S. was born almost eight months after Jermaine Sonnier's death, on February 9, 2022. Exhibit 34 at Pages 8:19 to 8:21; 11:12 to 11:15; Exhibit 33 at Pages 13:17 to 14:9. Jermaine Sonnier was never married to J. S.'s biological mother, Gabrielle Levine. Exhibit 34 at Page 10:18 to 10:19; Exhibit 33 at Pages 13:17 to 14:1; 14:13 to 14:19. Jermaine Sonnier was not listed as a parent on J. S.'s birth certificate. Exhibit 34 at Pages 13:8 to 14:5. Ms. Levine is the only parent on J. S.'s birth certificate. *Id.* Ms. Levine did not know she was pregnant with J. S. until after Jermaine Sonnier died. Exhibit 34 at Pages 11:15 to 12:1. Jermaine Sonnier never knew J. S. and never knew that Ms. Levine might be pregnant. *Id.* at Pages 8:13 to 8:16; 11:12 to 11:15. There has been no legal adjudication or acknowledgment of Sonnier's paternity, custody rights, child support obligations, parental rights. *Id.* at Pages 19:11 to 20:3.

Without a legal presumption, acknowledgment or adjudication of paternity, J. S. has no right after Sonnier's death to legally establish paternity for purposes of inheritance even if Sonnier is her biological father. *Turk*, LEXIS 227820, at *9 (S.D. Tex. 2017); *see also Pluet v. Frasier*, 355 F.3d 381, 384 (5th Cir. 2004) (dismissing civil rights claims after court found conservator lacked standing; minor was not the biological son of the deceased and thus, the Texas Wrongful Death Statute did not apply and estate did not authorize action); *King ex rel. Chaney v. Texas Med. Bd.*, 576 Fed. Appx. 353 (5th Cir.2014) (dismissing survival action for lack of subject matter

19

jurisdiction because plaintiff was not the rightful heir and did not enjoy standing).

> **B.    J. S. cannot establish standing under the Survival Act as a legal heir or personal representative of the estate of Jermaine Sonnier.**

Under the Texas Survival Statute, a personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(b).  However, for an heir to have standing to bring a survival action, the heir must generally plead and prove by clear and convincing evidence that she is a legal heir, that no administration of the decedent's estate is pending and that none is necessary.[4]

The Texas Estates Code defines an "heir" as "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate." TEX. EST. CODE § 22.015; *see id.* ch. 201 (Descent and Distribution); *City of Austin v. Membreno Lopez*, 632 S.W.3d 200, 224 (Tex. App.—Austin 2021).  If a person dies intestate without a surviving spouse, "[t]he person's estate descends and passes to the person's children and the children's descendants." TEX. EST. CODE §201.001(a)-(b).  For purposes of inheritance, a child is the child of the child's biological father if:

> (1) the child is born under circumstances described by Section 160.201, Family Code [or]
> (2) the child is adjudicated to be the child of the father by court decree under Chapter 160, Family Code . . . .

TEX. EST. CODE §§ 201.052 (a)(1)-(2); *see also Bell v. Hinkle*, 607 S.W.2d 936, 937 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

It is undisputed that neither Gabriella Lavine as next friend for J. S. nor anyone else formally applied for letters of administration or "qualified" as personal representative of Sonnier's

---

[4] *Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex. 1971); *City of San Antonio v. Rodriguez,* 856 S.W.2d 552, 564 (Tex. App.--San Antonio 1993, writ denied); *Johnson v. Holly Farms of Texas, Inc.,* 731 S.W.2d 641, 647 (Tex. App.--Amarillo 1987, no writ).  The right of an heir to bring a survival action is a standing issue. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998).

estate.  Exhibit 34 at Pages 19:11 to 19:17; Exhibit 33 at Pages 39:15-42:9.  It is undisputed that Jermaine Sonnier was never married and died intestate.  Exhibit 34  at Pages 10:18 to 10:19; 19:6 to 19:10; Exhibit 33 at Pages 13:17 to 14:1; 14:13 to 14:19.   J. S. was not born under circumstances described under described by section 160.201, Tex. Fam. Code., and J. S. was not adjudicated as the child of Jermaine Sonnier.  Exhibit 33 at Pages 39:15-42:9.

Even assuming *arguendo* that  J. S. was a legal heir, she lacks standing because she cannot prove that Sonnier's estate owed no debts and  had no assets, and thus, an administration is not necessary.  *Ford Motor Co. v. Cammack*, 999 S.W.2d 1, 10-11 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Plaintiff has no proof that the estate had no assets or debts.  *See, e.g.*, Exhibit 39.  Nor can Plaintiff J. S. prove either that she is the sole legal heir, or alternatively, that all the heirs and beneficiaries have consented to J. S. serving as representative and agreed to distribution of the estate.  *See id*. at 11 (decedent's husband lacked standing after concluding administration of the estate was necessary because the evidence showed the husband was not the only beneficiary of his wife's estate and the estate had debts); *see also Stewart v. Hardie*, 978 S.W.2d 203, 207 (Tex. App.--Fort Worth 1998, pet. denied).  There is evidence that Jermaine Sonnier had at least one other surviving child he acknowledged as his child – a son with Alia Campbell.  Exhibit 29 at 001854; Exhibit 31 at 003598; 3599; Exhibit 30 at 003618.  There is also evidence that Sonnier had a daughter that was born more than a year before J. S. and attended her birth at the hospital.  Exhibit 39 at 001766; Exhibit 34 at Pages 53:2 to 54:24.   Ms. Levine does not know whether Jermaine Sonnier had any other children and cannot claim that J. S. was his only heir.   Exhibit 33 at Pages 11:3 to 11:6.  Plaintiffs cannot prove J.S. is the estate's only legal heir and beneficiary.  And there has been no agreement amongst all the beneficiaries as to distribution of the estate or consenting to J. S. serving as representative.  *Ibid.  See also* Exhibit 34 at Pages 18:18 to 19:5; Exhibit 33 at

Pages 39:15 to 42:9.

Moreover, Gabrielle Levine as next friend of J. S. is disqualified from serving as personal representative under Texas law because she has been convicted of a felony offense. Exhibit 34 at Pages 24:20 to 25:22; Exhibit 32; *State of Texas v. Gabrielle Levine*, CAU:2023-DCR-1362 in the 452nd Judicial District Court of Kimble County, Texas. Convicted felons are disqualified from serving as personal representatives under the Texas Estates Code. TEX. EST. CODE § 304.003.[5]

The claims by Gabrielle Levine as next friend of J. S., individually and on behalf of the estate of Jermaine Sonnier, must be dismissed for lack of standing.

**V.** **Failure to establish standing and section 1983 claims disposes of Wrongful Death and Survival claims.**

The Texas wrongful death and survival statutes do not provide independent causes of action; they are merely a statutory vehicle for pursuing remedies that, under common law, could not be pursued after an individual's death. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 271 (5th Cir, 1996); *see also Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344-45 (Tex. 1992); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993). TEX. CIV. PRAC. & REM. CODE §§71.001-71.004, §71.010; §71.002(b). Dismissal of each of the underlying claims disposes of any wrongful death or survival actions as well.

**CONCLUSION AND PRAYER**

Defendant-Officers respectfully pray that the Honorable Court grant this motion and enter judgment in their favor, dismissing Plaintiff's claims with prejudice, and grant Defendants all other relief to which they may be justly entitled.

---

[5] Meghan Simms has not pled a Survival claim, but to the extent Plaintiffs argue she may do so, she lacks standing as well because she cannot prove she is the estate's sole legal beneficiary, or that an administration is not necessary.

22

Respectfully submitted,

**ARTURO MICHEL**
**City Attorney**

CHRISTY L. MARTIN
Section Chief, Torts/Civil Rights

Date: March 30, 2026.          By:     */s/ Melissa Azadeh*
                                        Melissa Azadeh
                                        TBN 24064851
                                        FBN 1090186
                                        Senior Assistant City Attorney
                                        City of Houston Legal Department
                                        P.O. Box 368
                                        Houston, Texas 77002-0368
                                        Tel. (832) 393-6270
                                        Fax (832) 393-6259
                                        melissa.azadeh@houstontx.gov

                                        ATTORNEYS FOR DEFENDANTS ERIC
                                        MALDONADO, ANTHONY JACKSON, TAYLOR
                                        PEACOCK, PERRY FENOGLIO, WILLIAM
                                        KEEFE, JERRY RIVERA, JOSEPH BRAVO, AND
                                        GARRETT PULATIE

23

## <u>CERTIFICATE OF SERVICE</u>

On this 30th day of March 2026, a true and correct copy of the foregoing document was served upon all parties through their attorneys of record, by e-mail or electronic transfer, in accordance with the Rules, and/or alternatively by e-mail or facsimile transmission, to the following:

Daryl K. Washington
Washington Law Firm, PC
325 N. St. Paul St., Suite 3950
Dallas, TX 75201
dwashington@dwashlawfirm.com

Debra V. Jennings
Law Office of Debra V. Jennings
6140 HWY 6, #269
Missouri City, Texas 77459
lawyerdvj@gmail.com

*/s/ Melissa Azadeh*
Melissa Azadeh

24