United States District Court
Southern District of Texas
**ENTERED**
August 04, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MEGHAN SONNIER SIMMS, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-CV-02004** |
| | § | |
| **JERRY RIVERS, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM & ORDER**

Before the Court is Defendant-Officers' Amended Motion for Summary Judgment ("Motion," ECF No. 75), in which Defendants seek summary judgment on Plaintiffs' excessive force and deliberate indifference to medical needs claims, as well as Plaintiffs' wrongful death and survival statute claims. The Court held a hearing on this Motion on June 2, 2026. Having considered the briefing of Parties; Parties' oral argument; and the supplemental authority submitted by Defendants on July 9, 2026, the Court hereby **GRANTS** the Motion in part and **DENIES** the Motion in part. There is one issue—concerning Plaintiffs' capacity to bring survival claims—which remains to be resolved at a later date.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A

genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "When unambiguous 'video evidence is available, [the Court] view[s] the facts in the light depicted by the video[].'" *Thorpe v. Weaver, et al.*, No. 24-40472, Dkt. No. 95-1 at *4 (5th Cir. July 8, 2026) (quoting *Boyd v. McNamara*, 74 F.4th 662, 665-66 (5th Cir. 2023)). However, "'when video evidence is ambiguous or . . . supports a nonmovant's version,' [the Court] 'credit[s] that party's account if' sufficient evidence supports it." *Id.* (quoting *Aguirre v. City of San Antonio*, 997 F.3d 395, 411 (5th Cir. 2021).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## II. QUALIFIED IMMUNITY

Qualified immunity bars suit against state officials so long as their actions were not "objectively unreasonable, in light of clearly-established law at the time [of the conduct in question], and in light of the information the officers possessed." *Wagner v. Bay City, Tex.*, 227

F.3d 316, 321 (5th Cir. 2000). "Clearly established" means that for an officer to be liable for some violation of a person's rights, the right itself must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.* Creighton, 483 U.S. 635, 640 (1987). Plaintiffs bear the burden of overcoming qualified immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 2011-12 (5th Cir. 2010).

## I. Excessive Force Claims

As the Court outlined in its Memorandum & Order on Defendants' Motion to Dismiss,

> [i]ndividuals have a Fourth Amendment right to be free from excessive force in the course of an investigatory stop or arrest. *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). To sustain a claim for excessive force under § 1983 plaintiff must plead an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver*, 410 F.3d at 751). Reasonableness depends on the context in which force is exerted. *See Hogan v. Cunningham*, 722 F.3d 725, 734 n.25 (5th Cir. 2013).
>
> . . .
>
> Whether force was unreasonable depends on "the facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Relevant considerations are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

ECF No. 43 at 9-10.

After reviewing comprehensive and unambiguous body camera footage[1] of Mr. Sonnier's interaction with the Police, the Court concludes that the force exerted by the officers in the course of Mr. Sonnier's arrest was not "clearly excessive" or "clearly unreasonable." The officers prepared to arrest Mr. Sonnier on suspicion of dealing drugs; he fled from his vehicle when the officers approached; he struggled against the officers as they tried to apprehend him;

[1] Defs. Exs. 10; 11; 12; 13; 14; 15; 16; 17.

and he did not comply with officer instructions. The officers' use of force was limited to the deployment of a taser and pain strikes to Mr. Sonnier's torso (some of which may have made contact with his head or neck), restraining Mr. Sonnier against a fence, and dragging him a few feet toward the police vehicle, and then carrying Mr. Sonnier to the police vehicle and securing him inside.[2]

At the time of Mr. Sonnier's arrest, the officers believed Mr. Sonnier might have a deadly weapon on his person. Defs. Ex. 2 at ¶¶17, 24; Defs. Ex. 5 at ¶¶16, 19, Defs. Ex. 8 at ¶¶18, 27-28.[3] He actively resisted officers' efforts to place him in custody, which prompted the officers to deploy a taser and pain strikes in order to subdue him. No officer used either of these methods against Mr. Sonnier once he was secured in handcuffs. A moment after the officers managed to place the handcuffs on him, however, Mr. Sonnier renewed his struggle. Officers restrained him briefly against a fence in order to prevent further movement. Because Mr. Sonnier would not walk to the police vehicle on his own, the officers dragged him several feet and then carried him

---

[2] Mr. Sonnier was in a prone position during much of his struggle with the officers, as well as for approximately one minute where it is not clear that Mr. Sonnier was actively struggling. During this period, Mr. Sonnier stated that he could not breathe. Plaintiffs argue that maintaining Mr. Sonnier in a prone position constituted deadly force, citing *Timpa v. Dillard*, 20 F.4th 1020, 1033 (5th Cir. 2021). However, "'[W]hether a particular use of force is 'deadly force' is a question of fact, not one of law.'" *Timpa,* 10 F.4th at 1032 (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). *Timba* is readily distinguishable.

*Timpa* involved an incident where two officers knelt for two minutes on the back of a subject who was obese, was in a state of excited delirium due to a known mental health crisis, and who the officers were aware had ingested cocaine. *Id.* at 1026-27. One of the officers knelt on his back for an additional twelve minutes. *Id.* at 1026. Approximately seven minutes into the restraint, the individual was fully subdued. *Id.* The officer maintained his knee on his back for three-and-half minutes after became unresponsive. *Id.* at 1027. The individual subsequently died of asphyxiation. *Id.*at 1034. These circumstances differ significantly from the circumstances in our case, where Mr. Sonnier was resisting arrest, was prone for a limited time, and was not subjected to the additional weight of a knee on his back. The only risk factor that would have been apparent to the officers at the time of Mr. Sonnier's initial arrest was that he was physically drained from fleeing the officers and from his struggle against them. Upon the record before the Court, a reasonable jury could not find that the officers' use of a prone restraint on Mr. Sonnier under these conditions "carried with it a substantial risk of causing death or serious bodily harm."

[3] Mr. Sonnier had brass knuckles on his person. Defs. Ex. 2 at ¶24.

the rest of the way to the car. In light of Mr. Sonnier's resistance, the officers' use of force was not clearly excessive or clearly unreasonable.[4]

Even if the officers had used excessive force against Mr. Sonnier, qualified immunity bars Plaintiffs' excessive force claims. The officers' conduct was not objectively unreasonable in light of the law at the time of Mr. Sonnier's death and the facts available to the officers during their struggle with him. Use of force is unjustified against a non-resisting subject. *Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017), However, this is not the case where, as here, a subject is noncompliant and resists arrest. *See, e.g., Solis v. Serrett*, 31 F.4th 975, 987 (5th Cir. 2022); *Priest v. Grazier*, 860 F. App'x 343, 344–45 (5th Cir. 2021).

The Court **GRANTS** Defendants' request for summary judgment on Plaintiffs' excessive force claims.

## II. Deliberate Indifference to Medical Need

As this Court has previously discussed,

> [t]he Due Process Clause of the Fourteenth Amendment guarantees that a person detained by police is entitled to medical care." *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010). "Violation of that right by deliberate indifference to serious illness or injury is actionable under § 1983." *Id*. To sustain a claim, "the plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Hill v. Carroll Cnty*., 587 F.3d 230, 238 (5th Cir. 2009). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n.12 (5th Cir. 2006). Actions that are merely "inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). A plaintiff can show deliberate indifference by alleging that officials "refused to

[4] The Court is unpersuaded by Plaintiffs' argument that the officers either did know, or should have known, that Mr. Sonnier might have ingested narcotics and been in a state of drug-induced excited delirium during his struggle with the officers, and that the officers should have adjusted their conduct to account for this risk. The record suggests that the officers only began to suspect that Mr. Sonnier had consumed drugs after they concluded their search of Mr. Sonnier's car and found no drugs inside. Even if the officers did have reason to suspect that Mr. Sonnier had taken drugs, the force they exerted still would not have been clearly excessive or unreasonable.

> treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

ECF No. 43 at 6.

To overcome qualified immunity, Plaintiffs must show that the right in question is clearly established. More specifically, they must show that "existing precedent [has] placed the . . . constitutional question beyond debate." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). However, Plaintiffs need not present a "factually indistinguishable case." *Thorpe*, No. 24-40472, Dkt. No. 95-1 at *4.

The body camera footage reveals that during his time in police custody, Mr. Sonnier began to experience an increasingly severe medical emergency. He first began complaining of difficulty breathing during his physical altercation with police officers, and he continued to complain of this symptom until he lost consciousness. Additionally, during the period between when the officers secured him in the back of the police vehicle and when the ambulance arrived, Mr. Sonnier stated that he was afraid he would die. He also expressed concerns about his heart as he was being removed from the police car and placed on the ground for paramedic evaluation.

While waiting for emergency services to arrive, the officer primarily overseeing Mr. Sonnier—Officer Anthony Jackson—seemed unconcerned with his wellbeing, evincing a cavalier or callous manner despite Mr. Sonnier's clear distress. Defs. Ex. 11; 16. When Mr. Sonnier complained that he couldn't breathe, Officer Jackson instructed Mr. Sonnier to take deep breaths and noted that he could see that Mr. Sonnier was breathing. Officer Jackson and another officer, Officer Fenoglio, also instructed Mr. Sonnier to sit up. When Mr. Sonnier said that he could not, Officer Jackson observed that Mr. Sonnier was moving around, so he must have at least some energy. Officer Jackson's lack of concern continued throughout a period of about

seven minutes when Sonnier gasped for air, slumped over, had difficulty responding to officer questions, pled with the officers for help; and told officers he was about to die. It would have been obvious to a layperson that Mr. Sonnier required assistance. Nevertheless, at one point, Officer Jackson responded to Mr. Sonnier's concerns by saying that he had lost his credibility by struggling with the police. Officer Fenoglio was also present for much of Mr. Sonnier's deterioration.[5]

At no point during the approximately fourteen minutes that it took the ambulance to arrive did any officer remove Mr. Sonnier from the vehicle, inquire more about his symptoms, ask Mr. Sonnier whether he had taken any drugs, provide him water, ask the emergency personnel to hurry, or administer Narcan. At least some of the officers on-site, including Officer Fenoglio, suspected that Mr. Sonnier may have hidden drugs inside his person. Defs. Ex. 11 at 13:30-14:15,

The Court concludes that these circumstances present a question of fact as to whether Officer Fenoglio and Officer Jackson acted with deliberate indifference to Mr. Sonnier's medical needs and whether any such deliberate indifference caused Mr. Sonnier's death. By contrast, the other officers at the scene did not observe Mr. Sonnier's condition over a significant period; accordingly, they could not have acted with deliberate indifference to Mr. Sonnier's medical needs.

The Court concludes that qualified immunity does not bar suit against Officer Fenoglio and Officer Jackson. It was clearly established at the time of the incident that an officer acts with

---

[5] Officer Jackson and Officer Fenoglio both asked Mr. Sonnier questions that Mr. Sonnier struggled to answer. Officer Fenoglio was present when Mr. Sonnier complained of difficulty breathing and when Mr. Sonnier stated his fear that he would die.

deliberate indifference to a detainee's medical needs when they disregard the individual's credible claims that they are experiencing a severe medical emergency. *See Sims v. Griffin*, 35 F.4th 945, 951-53 (5th Cir. 2022).[6] More specifically, "a [detainee] can show his clearly established rights under the Eighth Amendment were violated if [an] official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 951. As was the case in *Sims,* "a reasonable jury could find that [Officers Jackson and Fenoglio] each refused to treat [Mr. Sonnier], ignored his cries for help, and overall evinced a wanton disregard for [Mr. Sonnier's] serious medical needs." *Id.*

The Court therefore **GRANTS** Defendants' request for summary judgment on Plaintiffs' deliberate indifference claim as it applies to the conduct of Officers Joseph Bravo, William Keefe, Eric Maldonado, Taylor Peacock, Garrett Pulatie, and Jerry Rivera and **DENIES** the request as it applies to the conduct of Officer Fenoglio and Officer Jackson.

## III. STANDING AND CAPACITY

---

[6] In *Sims,* a detainee cried for help while detained in a jail cell. *Sims*, 35 F.4th at 952. The detainee showed symptoms of a clear illness—he appeared pained; had difficulty responding to officer commands; and twice vomited a black liquid. *Id.* at 948. It would have been obvious to a layperson that he required assistance. *Id.* at 952. There was also strong reason for the officers monitoring the detainee to suspect that he had consumed narcotics—namely that his vomit contained a piece of a plastic bag. *See id.* The Court acknowledges that the facts in *Sims* differed from those here because the detainee in *Sims* exhibited symptoms over the course of many hours in custody and because the officers never called emergency services on his behalf. *See id.* at 948. However, its holding is clearly applicable to the circumstances before the Court.

By contrast, Defendants suggest that the Fifth Circuit's narrow holding in *Thorpe*, No. 24-40472, Dkt. No. 95-1, requires this Court to conclude that qualified immunity bars Plaintiffs' suit. In *Thorpe*, the Fifth Circuit determined that a reasonable jury could find that an officer who likely saw a detainee lose consciousness while in route to a nearby jail deliberately ignored his medical needs. *Id* at 7-8. However, the Fifth Circuit went on to determine that it was not "clearly established in 2019 that an officer who observes a detainee lose consciousness during transport to jail must immediately secure aid." *Id.* at 2. Such facts are not at issue in the instant case; accordingly, *Thorpe* does not control.

Distinct from the merits-based summary judgment issues discussed in the preceding sections, Defendants request that the Court grant summary judgment for Defendants on Plaintiff J.S.'s claims under the Texas Wrongful Death Act (TWDA) and the Texas Survival Statute on the grounds that J.S.—who purports to be Mr. Sonnier's minor child and who is represented through their mother as next friend—lacks standing and capacity to sue.

**A. Standing Under the Texas Wrongful Death Act**

"An individual has standing, as a wrongful death beneficiary, under the Texas Wrongful Death and Survival Statute . . . , if he is the surviving spouse, child, or parent of the deceased." *Turk v. Magnum*, No. H-15-1003, 2017 U.S. Dist. LEXIS 227820, at *9 (S.D. Tex. 2017) (Hittner, J.). The TWDA does not define 'child.' While the *Texas Family Code* contains provisions stating when a father-child relationship is established, the Texas Supreme Court has clarified that the TWDA does not incorporate these provisions. *Garza v. Maverick Mkt., Inc.*, 768 S.W. 2d 273, 275-76 (Tex. 1989). Instead, "[i]f paternity is questioned in a wrongful death action, the alleged child would have to prove by clear and convincing evidence that he is a filial descendant of the deceased." *Id.* This is a question for the factfinder. *Id.* And, "[i]f . . . at least some evidence of paternity is offered in a suit under the Wrongful Death Act, an illegitimate child is entitled to a chance to argue to the trier of fact that he is the child of the alleged father." *Id.* at 276. Here, there is evidence that J.S. is Mr. Sonnier's child—in particular, the relationship between the child's mother and Mr. Sonnier, the mother's assertion while under oath at deposition that Mr. Sonnier was J.S.'s father, and Mr. Sonnier's own mother's acknowledgment of the child as her grandchild. Thus, there is an issue of material fact as to whether J.S. is Mr. Sonnier's child, and Plaintiff's claims under the TWDA may proceed. The Court **DENIES** summary judgment for Defendants on this issue.

**B. Capacity Under the Texas Survival Statute**

The Texas Survival Statute provides that the "heirs, legal representatives, and estate of" a decedent can bring a survival action. Tex. Civ. Practice & Remedies Code Section 71.021. Meghan Simms is currently seeking to appointment as Independent Administratrix of Mr. Sonnier's estate. The Court will withhold ruling on this aspect of the summary judgment motion for four weeks from the entry date of this order. Plaintiffs must provide an update on the status of Ms. Simm's appointment by that date.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 3rd day of August, 2026.

Keith P. Ellison
United States District Judge